Israel G. Torres (#020303)
James E. Barton II (#023888)
Jacqueline Mendez Soto (#022597)
TORRES LAW GROUP, PLLC
2239 West Baseline Road
Tempe, Arizona 85283
(480) 588-6120
James@TheTorresFirm.com
Jacqueline@TheTorresFirm.com
*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Arizonans for Fair Elections (AZAN), an Arizona nonprofit corporation; Arizonans Fed Up with Failing Healthcare (Healthcare Rising AZ) an Arizona nonprofit corporation; and Randi L. Turk, an individual, | Case No.: |
| | **COMPLAINT AND REQUEST FOR INJUNCTION** |
| Plaintiffs, | |
| v. | |
| Katie Hobbs, Arizona Secretary of State; Edison Wauneka, Apache County Recorder; David Stevens, Cochise County Recorder; Patty Hansen, Coconino County Recorder; Sadie Jo Bingham, Gila County Recorder; Wendy John, Graham County Recorder; Sharie Miheiro, Greenlee County Recorder; Richard Garcia, La Paz County Recorder; Adrian Fontes, Maricopa County Recorder; Kristi Blair, Mohave County Recorder; Doris Clark, Navajo County Recorder; F. Ann Rodriguez, Pima County Recorder; Virginia Ross, Pinal County Recorder; | |

Suzanne Sainz, Santa Cruz County Recorder; Leslie Hoffman, Yavapai County Recorder; and Robyn Pouquette, Yuma County Recorder; all in their official capacities,

Defendant.

Plaintiffs file this Complaint and Request for Injunctive Relief against Defendants, Katie Hobbs, as the Secretary of State (the "Secretary") for Arizona and the County Recorders of each Arizona County in their official capacities, and allege as follows:

## I.    NATURE OF ACTION

1.    At issue in this action is the constitutionality of certain provisions of title 19, Chapter 1, Arizona Revised Statutes, related to the signature-gathering process for initiative measures, under the current pandemic posed by the 2019 Novel Coronavirus ("COVID-19").  Plaintiffs contend that to the extent these provisions deny the committees supporting initiatives and voters who would like to sign petitions in support of these initiatives access to the State's secure online signature gathering system, they are unconstitutional because, given the current pandemic, they unduly burden and restrict the people's right to petition their government and gather signatures petitioning their government, an activity that is protected by the First Amendment as freedom of speech and association.

2.    Plaintiffs seek injunctive relief to require the Defendants to take or refrain from taking certain actions that would cause irreparable harm to the Plaintiffs and other similarly situated organizations and individuals.  The COVID-19 pandemic, which is

forcing people into quarantine and other self-isolating and social-distancing measures, makes enforcement of Title 19 provisions requiring signatures to be gathered in the presence of a circulator an unconstitutional burden at this time.  Injunctive relief is necessary to avoid imposing an unconstitutional burden on the Plaintiff's Free Speech rights that would prevent the people and organizations from qualifying their initiative measures to be on the ballot for the November 3, 2020 General Election.

## II.     THE PARTIES

3.     Plaintiff Arizonans for Fair Elections (AZAN) ("AFE") is an Arizona non-profit organization with its principal place of business in Phoenix, Arizona.  AFE is a social welfare nonprofit corporation within the meaning of Section 501(c)(4) of the Internal Revenue Code and was formed to promote the Fair Elections Act, a ballot initiative.  It is registered as a ballot measures committee with the Secretary as Committee Number 100141.

4.     Plaintiff Arizonans Fed Up with Failing Healthcare (Healthcare Rising AZ) ("HRAZ") is an Arizona non-profit organization with its principal place of business in Phoenix, Arizona.  HRAZ is a social welfare nonprofit corporation within the meaning of Section 501(c)(4) of the Internal Revenue Code and was formed to promote the Stop Surprise Billing and Protect Patients Act, a ballot initiative.  It is registered as a ballot measures committee with the Secretary as Committee Number 100082.

5.     Plaintiff Randi L. Turk is a qualified elector within the State of Arizona who would like to sign the petitions supported by the Committee Plaintiffs but has not yet done so.

6.     Defendant Katie Hobbs is Arizona's Secretary of State and Chief Elections Officer.  A.R.S. § 16-142.  As Arizona's Chief Elections Officer, the Secretary is responsible for overseeing the filing and processing of candidate and initiative petitions in elections and certifying the results of the elections.  A.R.S. §§ 16-301 through -351.01 and 19-101 through -161.  The Secretary is sued in her official capacity for omissions and actions taken under color of law that have infringed upon the people's constitutional rights.

7.     Defendants Edison Wauneka, Apache County Recorder; David Stevens, Cochise County Recorder; Patty Hansen, Coconino County Recorder; Sadie Jo Bingham, Gila County Recorder; Wendy John, Graham County Recorder; Sharie Miheiro, Greenlee County Recorder; Richard Garcia, La Paz County Recorder; Adrian Fontes, Maricopa County Recorder; Kristi Blair, Mohave County Recorder; Doris Clark, Navajo County Recorder; F. Ann Rodriguez, Pima County Recorder; Virginia Ross, Pinal County Recorder; Suzanne Sainz, Santa Cruz County Recorder; Leslie Hoffman, Yavapai County Recorder; and Robyn Pouquette, Yuma County Recorder; are the County Recorders in each Arizona County and are sued in their official capacity.

### III.   JURISDICTION

8.      Plaintiffs bring this action under 42 U.S.C. §§ 1983 and 1988 to redress the deprivation, under color of state law, of rights secured by the U.S. Constitution.

9.      This Court has original jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1343 because the matters in controversy arise under the Constitution and laws of the United States.

10.     This Court has personal jurisdiction over the Secretary and the County Recorders, who are sued in their official capacity only.

11.     Venue is proper in this district under 28 U.S.C. § 1391(b) because the Secretary and all County Recorders resides in Arizona and the events that gave rise to Plaintiffs' claims occurred in this judicial district.  Venue is proper in the Phoenix division because a substantial part of the events or omissions giving rise to this complaint occurred in Maricopa, County.

12.     This Court has authority to enter declaratory and injunctive relief under 28 U.S.C. §§2201 and 2202 and Rule 65 of the Federal Rules of Civil Procedure.

### IV.   GENERAL ALLEGATIONS

#### Background

13.     Pursuant to the Arizona Constitution, the people of Arizona have the power to enact or reject legislation through the initiative and referendum process.  Ariz. Const., art. 4, pt. 1, § 1.

14.     The power to enact or reject laws by initiative and referendum is equal to the legislative power vested with the Arizona Legislature; indeed, the people's legislative power is the first such power described in the Arizona Constitution.  See *Ariz. State Legislature v. Ariz. Indep. Redistricting Comm'n*, 135 S. Ct. 2652, 2660 (2015).

15.     The power to legislate by initiative begins with the filing of an initiative or referendum application with the Secretary for the purpose of obtaining a "serial" number that will be used in the processing of the initiative petition.  See Ariz. Const., art. 4, pt. 1, § 4; A.R.S. § 19-111(A).

16.     The serial number is essential to the petition and the sheets that will be used to gather signatures in support of the initiative's placement on the ballot.

17.     On October 4, 2019, HRAZ received its serial number I-24-2020 in order to begin circulating the Stop Surprise Billing and Protect Patients Act. (Arizona Secretary of State, Initiative, Referendum and Recall Applications, *available at* https://apps.arizona.vote/info/IRR/2020-general-election/18/0)

18.     On January 29, 2020, AFE received its serial number I-29-2020 in order to begin circulating Fair Elections Act. (Arizona Secretary of State, Initiative, Referendum and Recall Applications, *available at* https://apps.arizona.vote/info/IRR/2020-general-election/18/0)

19.     Immediately upon applying for and obtaining a serial number from the Secretary, HRAZ and AFE began to circulate initiative petitions through volunteer and paid circulators.

20.     While petition gathering was underway, information regarding COVID-19 began to surface in the United States.  This highly infectious illness, which causes fever, shortness of breath, and in some cases death, has quickly and steadily spread through many parts of the world, including Arizona.

21.     On January 21, 2020, the Center for Disease Control and Prevention ("CDC") confirmed the first case of COVID-19 within the United States.  See CDC Press Release, 1/21/2020, available at https://www.cdc.gov/media/releases/2020/p0121-novel-coronavirus-travel-case.html (last accessed on April 1, 2020).

22.     On March 11, 2020, the World Health Organization classified COVID-19 as a pandemic. See Chappell, *Coronavirus: COVID-19 Is Now Officially a Pandemic, WHO Says*, National Public Radio, 2020, at https://www.npr.org/sections/goatsandsoda/2020/03/11/ 814474930/coronavirus-covid-19-is-now-officially-a-pandemic-who-says (last accessed on March 25, 2020).

23.     Also on March 11, 2020, the Governor of Arizona issued a Declaration of Emergency. See Governor Doug Ducey, *Declaration of Emergency - COVID-19*, (Mar. 11 2020, at https://azgovernor.gov/sites/default/files/declaraton_0.pdf (last accessed on March 25, 2020).

24.     Since then the Governor has issued orders and recommendations to contain the spread of the virus.  These orders and recommendations include the closing of all schools for the remainder of the school year, staying home, attending a place of work only if essential and, should people be required to go out, to maintain at least six feet of separation from others.

25.    On March 13, 2020, President Donald Trump declared a national emergency to the pandemic. See President Donald Trump, *Proclamation on Declaring a National Emergency Concerning the Novel Coronavirus Disease (COVID-19) Outbreak*, (Mar. 13, 2020), at https://www.whitehouse.gov/presidential-actions/proclamation-declaring-national-emergency-concerning-novel-coronavirus-disease-covid-19-outbreak/.

26.    None of the emergency orders issued by the Governor or any other state official provide relief for obstacles to ballot access faced by initiative proponents, signature gatherers, or those who wish to support initiatives in light of COVID-19.

27.    The orders and recommendations from the medical community and federal, state and local governments have led Arizonans to quarantine themselves and maintain at least six feet of separation from others should it be necessary that they be out in public. These measures must be taken to prevent and reduce transmission of the virus, which is now believed to be spread in many cases by entirely asymptomatic carriers.

28.    On March 30, 2020, Governor Ducey issued a stay-at-home order for Arizona effective until April 30, 2020.  See *Physical Distancing to Mitigate COVID-19 Transmission* (Mar. 31, 2020, at https://azgovernor.gov/sites/default/files/eo_2020-18_stay_home_stay_healthy_stay_connected_1.0.pdf

29.    Plaintiff Randi L. Turk has not had an opportunity to sign the petitions circulated by AFE and HRAZ.

30.     Plaintiff Randi L. Turk desires to sign the petitions, but is not willing to violate quarantines, social distancing practices, or the shelter-in-place order to do so.

31.     The quarantines, social-distancing practices, and shelter-in-place order have dramatically burdened signature-gathering efforts underway by both AFE and HRAZ.

32.     As of March 18, 2020, AFE suspended their in-person signature-gathering efforts for the health and safety of the circulators as well as that of the community.

33.     On March 11, 2020, HRAZ also suspended their signature-gathering campaign for the same reasons.

34.     Thus, the requirements under Title 19 have restrained the Plaintiffs' right to free speech, and are, therefore, unconstitutional as applied during the current crisis.

### The Initiative Process

35.     "Constitutional and statutory requirements for statewide initiative measures must be strictly construed and persons using the initiative process must strictly comply with those constitutional and statutory requirements." See A.R.S. § 19-102.01.

36.     The initiative petition itself must substantially comply with the form prescribed by statute.  See A.R.S. § 19-101 and -102.

37.     The initiative process places specific requirements on the petition circulator and the signer (the elector), including:

(i)    "Every qualified elector signing a petition shall do so in the presence of the person who is circulating the petition and who is to execute the affidavit of verification."  See A.R.S § 19-112(A)

(ii)    In addition to signing the petition, the qualified elector must also print his or her first and last name, residence address or description of residence location if the elector does not have an address, and the date on which the elector signed the petition.  See A.R.S. § 19-112(A).

(iii)    Further, signature sheets must have attached at all times "a full and correct copy of the title and text of the measure." See A.R.S. § 19-112(B).

(iv)    The circulator must, by affidavit, "subscribe and swear before a notary public" that each signature, name and address were printed by the elector on the date indicated, that in the circulator's belief, the signer was a qualified elector, and that a copy of the title and text of the petition was attached to the signature sheet at all times during circulation.  See A.R.S. § 19-112(C).

38.    Additional print requirements include:  (1) printing the petition serial number in the lower right-hand corner on each signature sheet; (2) if applicable, printing the circulator's registration number in the lower right-hand corner of each signature sheet; (3) print that is at least eight-point type; and (4) print in black ink on white or recycled white pages fourteen inches in width by eight and one-half inches in length, with a margin of at least one-half inch at the top and one-fourth inch at the bottom of each page. See A.R.S. § 19-121(A).

**Qualifying for the Ballot**

39.     The signature sheets collected by the circulator must be filed with the Secretary not less than four months preceding the date of the election at which the measure is to be voted upon. See Ariz. Const., art. 4, pt. 1, § 4.

40.     For the November 3, 2020 General Election, the signature sheets must be filed with the Secretary by July 2, 2020.

41.     The initiative petition is filed by tendering the signature sheets to the Secretary by mail or in-person, who will issue a receipt based on an estimate made to the Secretary of the purported number of sheets and signatures filed.  See A.R.S. § 19-121.

42.     The Secretary may allow for electronic filing of the signature sheets, but to date has not adopted a method for doing so.  See A.R.S. § 19-121(C).

43.     For the initiative measure to be placed on the ballot, it must be supported by at least 10 percent of the qualified electors.  The qualified electorate is based on the total number of votes cast for all candidates for governor in the preceding gubernatorial election.  See Ariz. Const., art. 4, pt. 1, §§ 2, 7.

44.     For the 2020 election cycle, individuals and organizations seeking to place initiative measures on the ballot for the November 3, 2020 General Election must gather 237,645 valid signatures from qualified electors.   See ARIZONA SEC'Y OF STATE, http://www.azsos.gov/elections/initiative-referendum-and-recall.

45.     Once the Secretary receives the petitions, the Secretary must engage in a series of steps to remove entire sheets that do not strictly comply with the aforementioned-requirements and otherwise invalid signatures.  See A.R.S. § 19-121.01

46.     For example, the Secretary must remove entire sheets, which would include valid signatures from qualified electors, that (1) do not have an attached copy of the title and text of the initiative; (2) do not have the correct petition serial number and, if applicable, the paid circulator registration number in the lower right-hand corner of each side; (3) do not contain the circulator's notarized affidavit, or contain a defective notarization; (4) contain a circulator's or notary date that is earlier than the dates on which the electors signed the petition; and (5) were collected by an unregistered circulator. See A.R.S. § 19-121.01(A).

47.     It is not until after the Secretary has removed entire sheets based on print mistakes and notary deficiencies that the Secretary and county recorders review the validity of individual signatures under the criteria set by See A.R.S. § 19-121.01.

48.     Within fifteen court days of receiving facsimiles of signature sheets from the Secretary that identify a 5% sample of signatures, County Recorders must determine which signatures of individuals are disqualified for a variety of reasons. See A.R.S. § 19-121.02.

49.     Signatures are disqualified based on a comparison with the signature on the affidavit of the signer's registration.  See Id. -121.02(A)(7).

50.     After this process of eliminating entire sheets and individual signatures, the proponent of the initiative must have 237,645 valid signatures to get on the ballot.

51.     Understandably, people and organizations supporting an initiative measure will seek to obtain substantially more than 237,645 signatures in the event signatures are stricken through this arduous review process.

**E-Qual System**

52.     Candidate nominating petitions are required to include the following information for qualified electors signing the petitions: signature, printed name, actual residence address, description of place of residence or Arizona post office box address, city or town, and date of signing.  See A.R.S. § 16-316(A)(4).

53.     Initiative petitions shall be in substantially the same form as referendum petitions, A.R.S. § 19-102(A), which means qualified electors signing the petition must include: signature, printed name, actual address, Arizona post office address & zip code, city or town, and date signed. See A.R.S. § 19-101(A).

54.     Arizona has implemented secure online signature collection for candidates for statewide and legislative offices.  See A.R.S. § 16-316.

55.     This system is known as "E-Qual," and it allows for signing candidate nominating petitions and making five-dollar qualifying contributions to publicly funded candidates.     See Secretary of State, Welcome to E-Qual (*available at* https://apps.azsos.gov/equal/).

56.    Arizona law denies initiative campaigns access to the E-Qual system or any other electronic signature filing alternative.

**Restraint on Freedom of Speech and Association**

57.    AFE and HRAZ began their signature gathering efforts immediately upon obtaining their serial numbers form the Secretary.

58.    At that point, COVID-19 had not been declared a pandemic and people carried about their normal business.

59.    The circulators of the petitions approached people to request their support for the initiative the campaign was sponsoring and obtained their signature on the petitions.

60.    The circulators carried the sheets with the title and text of the measure of the petition on a clip board and they provided a pen to the elector to sign the petition.

61.    This encounter requires the circulator and elector to stand close to each other, in all likelihood in a face-to-face posture, and they exchange material (the clipboard, signature sheet, and pen) with each other.

62.    This seemingly ordinary activity in "normal" times could prove to be harmful during the COVID-19 pandemic, and would be in violation of recommendations from the government and medical experts to remain at home and avoid being in close proximity to others (six feet apart).

63.    As of March 25, 2020, there were 54,453 cases and 737 deaths in the United States.        See    Centers    for    Disease    Control    and    Prevention,    at

14

https://www.cdc.gov/coronavirus/2019-ncov/cases-updates/cases-in-us.html (last accessed on April 2, 2020)**.**

64.    As of the same time, there were 410 confirmed cases of COVID-19 in Arizona and six deaths.    See ARIZ. DEPT. OF HEALTH SERVICES, at https://www.azdhs.gov/preparedness/epidemiology-disease-control/infectious-disease-epidemiology/index.php#novel-coronavirus-home (last accessed on April 2, 2020).

65.    The continuing spread of COVID-19 threatens to exhaust medical facilities and deplete medical equipment in Arizona, not to mention the lives that will be lost or severely harmed as the pandemic spreads.

66.    The Arizona Health Director stated that the illness would peak in April and that hospitalizations will peak in May, with the number of cases in Arizona significantly increasing.    See Polletta, *Illnesses from Coronavirus Could Peak in April with Hospitalizations Topping Out in May, Health Officials Say*, Arizona Republic, 2020, available at https://www.azcentral.com/story/news/local/arizona-health/2020/03/26/coronavirus-arizona-cases-could-peak-april-may-health-officials-covid-19-news/5083947002/ (last accessed on April 2, 2020).

67.    The Health Director further elaborated that the State could face a shortage of 13,000 hospital beds and 1,500 Intensive Care Unit beds.  See *Id.*

68.    The government officials' recommendations and orders for people to stay at home, and to keep at least six feet apart from others when required to be in public, must be adhered to strictly to avoid aggravating the crisis at hand.

69.     For those reasons, and to safeguard the health and safety of circulators and the community, AFE and HRAZ were compelled to stop their in-person signature-gathering efforts.

70.     The requirement that electors sign the petition "in the presence of the person who is circulating the petition," A.R.S § 19-112(A), cannot be accomplished during the pandemic.

71.     Likewise, the requirement that the circulator sign his or her affidavit "before a notary public" cannot be accomplished during the pandemic. See A.R.S. § 19-112(C)

72.     Strictly enforcing these provisions, as the Secretary is required to do absent court intervention, A.R.S. § 19-102.01, puts the public's health at risk, contributes to the strain on medical services, and prolongs the pandemic.

73.     Plaintiff Randi L. Turk is required to literally endanger her life in violation of public health warnings and stay-at-home orders in order to exercise her free speech.

74.     Failure to obtain the required number of signatures under the Secretary's strict enforcement during the quarantine and social-distancing period, and thereby fail to qualify for the November 3, 2020 General Election ballot, in effect restrains the Plaintiffs' freedom of speech and association.

## V.     IRREPARABLE INJURY

75.     Plaintiffs seek injunctive relief from the strict enforcement of the provisions in the law that unduly burden and effectively restrain freedom of speech and association during the term of the COVID-19 pandemic.

76.     Plaintiffs cannot continue in-person signature gathering methods, either volunteer or paid, in light of the present pandemic and related state and federal advisories. [Maldonado Decl. ¶ 33; Grennan Decl. ¶ 22.]

77.     Plaintiffs also seek injunctive relief from the unequal protection of the right to gather and submit electronic signatures.

78.     Absent injunctive relief, Plaintiff[s] will suffer irreparable injury.  Under the laws governing initiatives, it is impossible for Plaintiffs obtain signatures during the pandemic to qualify their measure for the ballot.  [Gallaway Decl. ¶ 44.]

79.     But for the COVID-19 pandemic, campaigns would be expected to gather approximately 160,000 signatures during the period of time that the shelter-in-place recommendations and orders have been and will continue to be in effect (March 11 through April 30).  [Gallaway Decl. ¶ 47.]

80.     There are no remedies available to compensate them for their harm or to qualify their measure for the ballot.

81.     The hardship to Plaintiff outweighs any burden on the Defendants by granting relief.

82.     The injunctive relief sought does not hurt the public interest.

## VI.    CLAIMS FOR RELIEF

### COUNT I

### First Amendment

83.    Plaintiffs reallege and incorporate by reference all prior paragraphs in this Complaint as realleged herein.

84.    The government shall make no law abridging the freedom of speech and to assemble. U.S. Const., amend. I.

85.    The First Amendment is at the core of petition circulation; petition circulation is "core political speech" because it involves interactive communication concerning political change. See *Buckley v. Am. Const. Law Found., Inc.*, 525 U.S. 182, 188 (1999) (quoting *Meyer v. Grant*, 486 U.S. 414 (1988)).

86.    The freedom to engage in political speech, the advancement of beliefs and ideas, is an inseparable aspect of the liberty assured by the Due Process Clause of the Fourteenth Amendment, which embraces the freedom of speech." See *Anderson*, 460 U.S. at 787, 130 S.Ct. at 1569 (quoting *NAACP v. Alabama*, 357 U.S. 449, 460, 78 S.Ct. 1163 (1958)).

87.    The Secretary's strict enforcement of A.R.S. §19-112, requiring that an elector sign in the presence of a circulator and that the circular sign an affidavit before a notary public, unduly burdens the public's right to engage in political speech during the COVID-19 pandemic.

88.     During the pandemic, it is impossible for electors and circulators to satisfy the requirements of A.R.S. § 19-112, and consequently, the supporters of the initiatives promoted by AFE and HRAZ will not obtain sufficient signatures by July 2, 2020, to qualify for the November 3, 2020 General Election Ballot.

89.     For these reasons, the Defendants must be restrained from enforcing these provisions that unduly burden and restrict the Plaintiffs' First Amendment rights.

90.     Plaintiffs seeks a preliminary injunction allowing them to gather signatures by means other than those prescribed under A.R.S. § 19-112 and prohibiting the Secretary from disqualifying those signatures under the A.R.S. § 19-121.01(A); and similarly, County Recorders disqualifying under A.R.S. § 19-121.02(A)(7).

## COUNT II

### First and Fourteenth Amendment Undue Burden

91.     Plaintiffs reallege and incorporate by reference all prior paragraphs in this Complaint as realleged herein.

92.     Denying initiative proponents like AFE and HRAZ, and potential petition signers like Plaintiff Randi L. Turk access to Arizona's E-Qual system burdens right to engage in the initiative process.

93.     The state need not confer to its people the right of the initiative, but once it has, it may not regulate that right in a way that violates the federal constitution.  See *Idaho Coalition United for Bears*, 342 F.3d 1073, 1077 (9th Cir. 2003) (citing *Bush v. Gore*, 531 U.S. 98, 104 (2000)).

94.     A burden on the right to initiative is undue if it cannot be justified by weighing the magnitude of the burden imposed on the plaintiffs by the State's specific purpose for imposing the burden and necessity to vindicate that purpose by imposing the burden.  See, *e.g.*, *Feldman v. Arizona Sec'y of State's Office*, 840 F.3d 1057, 1078 (9th Cir. 2016).

95.     Such analysis is dependent on the specific circumstances in which the burden is imposed.

96.     As described above, denying access to E-Qual in light of the current pandemic places an extraordinary burden on Plaintiffs AFE and HRAZ in their effort to gather signatures.

97.     Likewise, it literally requires Plaintiff Randi L Turk to put her life at risk in order to exercise her Freedom of Speech.

98.     The State's specific purpose of preventing fraud can be accomplished without denying Plaintiffs access to the E-Qual system.

99.     The Secretary's allowing candidates to obtain signatures on their nomination petition via E-Qual, A.R.S. § 16-316, while restricting such access for initiatives under A.R.S. § 19-112, -121.01, and -121.02 during the COVID-19 pandemic results in an undue burden on the exercise of Free Speech.

WHEREFORE, Plaintiffs respectfully request that this Court:

A.     Declare the provisions governing the signature-gathering requirements for initiative measures under Title 19, Chapter 1, of the Arizona Revised Statutes, violate the

First and Fourteenth Amendments to the United States Constitution during the state of emergency in Arizona caused by the COVID-19 pandemic;

B.      Enjoin the Secretary from strictly enforcing the signature gathering requirements for initiative petitions as related to accepting electronic signatures gathered during the state of emergency in Arizona caused by the COVID-19 pandemic;

C.      Order the Secretary to allow the electronic submission of signatures through E-Qual or a similar electronic process for submitting signatures in support of initiative measures during the state of emergency in Arizona caused by the COVID-19 pandemic;

D.      Enjoin County Recorders from striking signatures based solely on their submission in electronic form during the state of emergency in Arizona caused by the COVID-19 pandemic;

E.      Award Plaintiffs their costs, disbursements, and reasonable attorneys' fees incurred in bringing this action pursuant to 42 U.S.C. § 1988 and other applicable laws; and

F.      Grant any other relief the Court deems just and proper.

RESPECTFULLY SUBMITTED this 2nd day of April, 2020.

TORRES LAW GROUP, PLLC

/s/James E. Barton II
James E. Barton II (#023888)
Jacqueline Mendez Soto (#022597)
TORRES LAW GROUP, PLLC
2239 West Baseline Road
Tempe, Arizona 85283
(480) 588-6120
James@TheTorresFirm.com

21

Jacqueline@TheTorresFirm.com
*Attorneys for Plaintiff*