IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Arizonans for Fair Elections (AZAN); et al., <br><br> Plaintiffs, <br><br> v. <br><br> Katie Hobbs, Arizona Secretary of State; et al., <br><br> Defendants. | Case No: <br><br> **AFFIDAVIT OF JESSICA GRENNAN** |

**State of Arizona**            )
                                )  **ss:**
**County of Maricopa**     )

     I, Jessica Grennan, on this second day of April, 2020, declare under penalty of perjury that the following is true and correct to the best of my knowledge, information, and belief:

     1.    I am over 18 years of age and have personal knowledge of the facts stated herein.

     2.    I am the campaign manager for Arizonans Fed Up With Failing Healthcare (Healthcare Rising AZ) (the "Committee"), which is an Arizona corporation organized

exclusively for the purpose of promoting social welfare within the meaning of Section 501(c)(4) of the Internal Revenue Code.

3. The Committee is a political action committee that was formed to promote the Stop Surprise Billing and Protect Patients Act ballot initiative (the "Ballot Initiative"), which the Committee seeks to place on the ballot for the November 3, 2020 General Election.

4. The Committee is registered as a ballot measure committee with the Arizona Secretary of State.

5. As campaign manager, I oversee the day-to-day operations related to the Ballot Initiative, including ensuring that the Ballot Initiative is on track to obtain the required number of signatures from electors to qualify the measure for the November 3, 2020 General Election.

6. I am knowledgeable of Arizona laws governing the initiative process.

7. On August 26, 2020, the Committee applied for a serial number with the Secretary of State to begin the initiative process.

8. On the same day, the Committee submitted the text of the Ballot Initiative to the Arizona Legislative Council for review pursuant to Arizona statute.

9. On September 24, 2019, the Committee received comments and edits from the Legislative Council on the Ballot Initiative. Upon review of the comments and edits, the Committee made the necessary changes to the Ballot Initiative and refiled the application for serial number with the Secretary on October 4, 2019.

10. In order to qualify the initiative for the November 3, 2020 General Election Ballot, the Committee must turn in 237,645 valid signatures from qualified electors in support of the measure to the Secretary by July 2, 2020.

11. The Committee contracted with FieldWorks, LLC ("FieldWorks"), to assist the Committee with the circulation of the Ballot Initiative petition. FieldWorks is a campaign-management firm that assists with the collection of signatures.

12. The Committee also relies on volunteers to circulate the Ballot Initiative.

13. The Committee had already began collecting signatures when the COVID-19 illness began to emerge in the United States in January 2020.

14. By early March, 2020, COVID-19 was classified as a pandemic, and the federal and state governments and medical experts strongly recommended that people self-isolate and practice social-distancing from others when in public, which meant maintaining a six-foot distance from others.

15. On March 11, the Governor of Arizona declared the pandemic a state of emergency in Arizona, further emphasizing that people quarantine and refrain from contact outside their homes to prevent the transmission of this highly infectious disease.

16. In addition to the government and medical experts recommending that people engage in self-isolation and social distancing, they also recommended that all gatherings of more than 10 people be avoided and that large events be canceled. Indeed, shortly thereafter, the Governor closed schools for the following weeks and recommended that all public and private facilities close to reduce the spread of the disease.

17. By March 11, the Committee had obtained 273,786 signatures gathered from paid and volunteer circulators.

18. The Committee began exercising precautionary measures to reduce viral exposure to its circulators and the public.

19. To successfully meet the statutory signature requirements, the Committee depends on large gatherings of people. At the point that the Governor declared a state of emergency, all large gatherings, such as concerts, sporting events, and festivals, were canceled. This caused the Committee's signature-gathering efforts to significantly decrease. The Committee lost the signatures it projected to obtain to meet the minimum requirement by July 2.

20. Circulators were left to solicit signatures on a door-to-door basis, which is not an effective and efficient method of obtaining signatures.

21. Moreover, with the social-distancing recommendations in place, the limited signature gathering a circulator could do was also unreasonable. Requesting a signature involves the circulating coming close to the potential signer to show them a copy of the petition, explain the contents, and provide the clip board with the signature sheet and pen to the signer. This process breaks the six-foot distance rule people were instructed to follow when out in public.

22. For these reasons, and to ensure the health and safety of circulators and the general public, the Committee suspended public efforts on March 11, 2020.

23. On March 30, 2020, the Governor issued an order encouraging people to remain at home and closing schools for the remainder of the school year. This order is in

effect until April 30, 2020, and subject to extension if the rise of the COVID-19 cases is not stopped. It is projected that the illness will spike in mid-April, with hospitalizations spiking in May. Based on this information, the Committee does not know if it will be able to resume its efforts by April 30.

24. Regardless, the Committee has lost a substantial number of signatures since the emergency declaration was issued. At this point, it is unreasonable to expect the Committee to meet the statutory signature requirement by July 2, 2020.

25. By law, the signers must sign the petition in the presence of the circulator. With the stay-at-home order in effect, this process will not be possible to accomplish.

26. The Secretary allows candidates to obtain signatures electronically via E-Qual, an online system for qualified electors to submit signatures in support of a candidate.

27. This same process should be available to ballot initiative campaigns, as it already ensures that only qualified electors sign a candidate petition. The same security checks can be put into place for people wanting to sign the initiative petition, ensuring that only qualified electors sign the petition.

28. Absent the availability of electronic signature submittal, electors will be deprived of the right to sign initiative measures for voting by the public in the November 3, 2020 General Election.

FURTHER AFFIANT SAYETH NAUGHT.

_____
Jessica Grennan