**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Arizonans for Fair Elections, et al., | No. CV-20-00658-PHX-DWL |
| Plaintiffs, | **ORDER** |
| v. | |
| Katie Hobbs, et al., | |
| Defendants. | |

On April 4, 2020, Plaintiffs filed a complaint alleging that certain statutes governing Arizona's citizen initiative process, which appear in Title 19 of the Arizona Revised Statutes, constitute an unconstitutional inhibition of their First and Fourteenth Amendment rights in light of the state and local responses to the COVID-19 pandemic. (Doc. 1.) Specifically, Plaintiffs allege that the state and local responses make it impossible to gather initiative-petition signatures in the manner required by Title 19. (*Id.*) Plaintiffs list Arizona Secretary of State Katie Hobbs (the "Secretary"), who oversees Arizona's elections, as well as each of Arizona's county recorders, who oversee local elections and assist the Secretary with certain statutory duties, as defendants. (*Id.*)

Also on April 4, 2020, Plaintiffs filed a motion for a temporary restraining order ("TRO"), asking the Court to order the Secretary to permit the use of Arizona's "E-QUAL" system to gather initiative-petition signatures electronically and to enjoin the Secretary and county recorders from striking any signatures gathered via that system. (Doc. 2.) Plaintiffs sought this order without notice to Defendants, but the Court concluded "this is not the sort

of unusual case where proceeding without notice to the adverse parties would be appropriate." (Doc. 9 at 2.) The Court instead set a briefing schedule and scheduled a hearing for April 14, 2020. (*Id.* at 3.)

Since the Court issued its order, the State of Arizona, represented by the Arizona Attorney General, has moved to intervene in this case pursuant to Rule 24. (Doc. 46.) Plaintiffs oppose that request. (Doc. 59.) For the following reasons, the intervention motion will be granted.

**ANALYSIS**

"Rule 24 recognizes two types of intervention: (1) intervention of right; and (2) permissive intervention. Courts must permit intervention of right, but may permit or deny permissive intervention." Gensler, 1 Federal Rules of Civil Procedure, Rules & Commentary, Rule 24, at 690 (2020). Here, the State seeks to intervene under both theories.

I.    Intervention Of Right

Intervention of right is available to anyone who "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." Fed. R. Civ. P. 24(a)(2). Courts in the Ninth Circuit employ a four-part test when analyzing intervention of right:

> (1) the motion must be timely; (2) the applicant must claim a "significantly protectable" interest relating to the property or transaction which is the subject of the action; (3) the applicant must be so situated that the disposition of the action may as a practical matter impair or impede its ability to protect that interest; and (4) the applicant's interest must be inadequately represented by the parties to the action.

*Wilderness Soc. v. U.S. Forest Serv.*, 630 F.3d 1173, 1177 (9th Cir. 2011) (quoting *Sierra Club v. EPA*, 995 F.2d 1478, 1481 (9th Cir. 1993)). These requirements are broadly construed, because "a liberal policy in favor of intervention serves both efficient resolution of issues and broadened access to the courts." *Id.* (citation omitted).

…

A. **Timeliness**

"Timeliness is a flexible concept; its determination is left to the district court's discretion." *United States v. Alisal Water Corp.*, 370 F.3d 915, 921 (9th Cir. 2004). In determining whether a motion to intervene is timely, courts consider: "(1) the stage of the proceeding at which an applicant seeks to intervene; (2) the prejudice to other parties; and (3) the reason for and length of the delay." *Id.* (citation omitted).

Here, as Plaintiffs concede (Doc. 59 at 3), the motion is timely. When intervention is sought "at the outset of the litigation," it is well within a court's discretion to allow it. *Sierra Club*, 995 F.2d at 1481. Such is the case here—the State sought to intervene within 48 hours of when this suit was initiated and before most of the defendants had even been served, let alone answered.

Given that, the other two factors are easy to resolve. The State has agreed to abide by the Court's briefing schedule. (Doc. 46 at 4.) Thus, there is no possible prejudice in allowing the State to intervene. Finally, given that there was no delay in filing its motion, the State need not explain the reason for and length of the delay.

B. **Significant Protectable Interest**

"The 'interest' test is not a bright-line rule." *Alisal Water Corp.*, 370 F.3d at 919. It is a fact-bound inquiry and "no specific legal or equitable interest need be established." *Citizens for Balanced Use v. Mont. Wilderness Ass'n*, 647 F.3d 893, 897 (9th Cir. 2011). In fact, "Rule 24(a)(2) does not require a specific legal or equitable interest . . . . [T]he 'interest' test is primarily a practical guide to disposing of lawsuits by involving as many apparently concerned persons as is compatible with efficiency and due process." *Wilderness Soc.*, 630 F.3d at 1179 (citation and quotation marks omitted). *See also* Gensler, Rule 24, at 700 (noting that the Ninth Circuit does not "rigidly require that the interest derive from a substantive right").

There is "no doubt" that a state has standing to defend the constitutionality of its statutes. *Va. House of Delegates v. Bethune-Hill*, 139 S. Ct. 1945, 1951 (2019). Moreover, the Supreme Court has emphasized that states in general—and Arizona in particular—have

a "compelling interest in preserving the integrity of [the] election process" because "[c]onfidence in the integrity of our electoral processes is essential to the functioning of our participatory democracy. Voter fraud drives honest citizens out of the democratic process and breeds distrust of our government. Voters who fear their legitimate votes will be outweighed by fraudulent ones will feel disenfranchised." *Purcell v. Gonzalez*, 549 U.S. 1, 4 (2006). Here, Plaintiffs seek to enjoin enforcement of portions of Title 19, which the State has unequivocally indicated are meant to safeguard the integrity of the election process. A.R.S. § 19-101.01 ("The legislature . . . finds and determines that strict compliance with the constitutional and statutory requirements for the referendum process and in the application and enforcement of those requirements provides the surest method for safeguarding the integrity and accuracy of the referendum process."); *Id.* § 19-102.01(A) (same as to initiative process). Plaintiffs acknowledge as much. (Doc. 2 at 12 ["The State's interest in requiring signatures to be gathered by a petition circulator who complies with the numerous requirements of Title 19 is to ensure that the hundreds of thousands of required signatures for placement on the ballot come from qualified electors. . . . Under ordinary circumstances, requiring such gathering of signatures would provide somewhat of a burden, but it could arguably be justified by the State's interest in preventing fraud . . . ."].). Thus, the State has not asserted "a vague, undifferentiated interest," as Plaintiffs suggest (Doc. 59 at 2), but an interest that cuts to the core of the State's role in effectuating the democratic process.

Plaintiffs' arguments to the contrary are unpersuasive. They cite two cases for the proposition that "a legislator's personal support does not give him or her an interest sufficient to support intervention" (Doc. 59 at 4), but that argument is inapplicable here, where the Attorney General has explicit statutory authority to assert the State's interest. A.R.S. § 41-193(A)(3). *See also Bethune-Hill*, 139 S. Ct. at 1951 ("[A] State must be able to designate agents to represent it in federal court.") (quotation omitted).

In a similar vein, Plaintiffs argue that the State's interest is minimal because "the relief sought in the instant cases does not fundamentally change the structure of Arizona's

elections" and Plaintiffs are merely "propos[ing] a temporary adaption to sustain the constitutionality of Arizona's system in the face of a global pandemic." (Doc. 59 at 4.) The State's papers indicate, however, that it contests this point—that is the entire reason it seeks to intervene. (Doc. 46 at 4-5 ["Invalidation of any state election procedure undoubtedly has an effect on the State sufficient to support intervention. And because that is precisely the relief the Plaintiffs seek, the potential-impairment requirement is plainly satisfied here."].) Plaintiffs' objection, then, is essentially an argument on the merits. Courts "should not prematurely reach the merits" of a case when deciding whether to allow intervention. *See* Gensler, Rule 24, at 699.

C. **Practical Impairment**

"If an absentee would be substantially affected in a practical sense by the determination made in an action, he should, as a general rule, be entitled to intervene." Fed. R. Civ. P. 24, 1966 advisory committee note. This element "follows" from the other factors, *Sierra Club*, 995 F.2d at 1486, and once those factors are satisfied, courts often "have little difficulty concluding that the disposition of [a] case may, as a practical matter, affect" an intervenor's interests. *California ex rel. Lockyer v. United States*, 450 F.3d 436, 442 (9th Cir. 2006).

Such is the case here. The Court has little difficulty concluding that disposition of this case may affect the State's interests. Plaintiffs seek exceptions to a litany of statutory requirements aimed at ensuring that initiative-petition signatures are legitimate, including requirements that all petitions be signed in person, on paper sheets, with a full and correct copy of the initiative attached. (Doc. 2 at 4-5.) Then, the signature gatherer must sign a sworn affidavit attesting that those signatures were obtained legitimately. (*Id.*) The Arizona Supreme Court has stated that the requirements imposed on signature gatherers, in particular, "represent[] a reasonable means of fostering transparency . . . and mitigating the threat of fraud or other wrongdoing infecting the petition process." *Stanwitz v. Reagan*, 429 P.3d 1138, 1144 (Ariz. 2018) (citation omitted). The perceived benefit of those requirements could be lost if the State were forced to allow for electronic submission of

petition signatures.

That Plaintiffs seek only temporary changes to Arizona's election laws does not alter the analysis. (Doc. 59 at 4.) As an initial matter, it is impossible to gauge how "temporary" the requested adjustments may be. Plaintiffs' relief is tied to the ongoing COVID-19 pandemic. It is folly for anyone to predict exactly how long the pandemic will last and how long the state and local responses to the pandemic will remain in effect. More important, the State has an interest in maintaining the integrity of *every* election, not every election except this one. There is no mulligan rule when it comes to elections.

D.     **Adequate Representation**

Finally, the State must show that existing parties "may not adequately represent [its] interest." *Citizens for Balanced Use*, 647 F.3d at 898. This requires a "minimal" showing and is satisfied if existing parties' representation of its interest "may be" inadequate. *Id.* To determine adequacy, courts examine: "(1) whether the interest of a present party is such that it will undoubtedly make all of a proposed intervenor's arguments; (2) whether the present party is capable and willing to make such arguments; and (3) whether a proposed intervenor would offer any necessary elements to the proceeding that other parties would neglect." *Id.* (citation omitted).

Thus far, the Court knows the position of only two defendants: the Secretary and the Pima County Recorder. Both have indicated they do not intend to oppose Plaintiffs' TRO request—in fact, they support it. (Doc. 46 at 5-6; Doc. 53.) Thus, it appears neither of those officials is willing to make the arguments the State seeks to make. Moreover, because Plaintiffs', the Secretary's, and the Pima County Recorder's interests have apparently converged, this case could—absent intervention—come dangerously close to asking the Court to issue an advisory opinion, something it is forbidden from doing. *Golden v. Zwickler*, 394 U.S. 103, 110 (1969) ("No federal court, whether [the Supreme Court] or a district court, has jurisdiction to pronounce any statute, either of a state or of the United States, void . . . except as it is called to adjudge the legal rights of litigants in actual controversies.") (citation omitted). Allowing the State to intervene resolves this

issue, thus "offer[ing] [a] necessary element[] to the proceeding." *Citizens for Balanced Use*, 647 F.3d at 898.

This analysis disposes of Plaintiffs' argument to the contrary, which seeks to characterize the issue as "some elected officials disagree[ing] with the position taken by the Secretary." (Doc. 59 at 5.) In Plaintiffs' view, because the Secretary and the county recorders are the officials constitutionally responsible for elections, their opinions and positions are the only ones that matter. (*Id.*) It's true that the Secretary is Arizona's lead election official, but in light of the clear interest the State has in the enforcement of its election laws, combined with the Secretary's lack of interest in opposing Plaintiffs' motion, the State's interest would go unrepresented were it not allowed to intervene. As the State aptly puts it in its motion: "[I]f a State statute is to be enjoined, it should be defended by at least one state official. Basic principles of federalism should permit the State the opportunity to defend its laws before they are declared unconstitutional." (Doc. 46 at 7.)

Finally, Plaintiffs contend that the Secretary, as the chief elections officer, necessarily represents the interests of the State on election matters. Setting aside that this wouldn't avoid the advisory opinion issue discussed above, if the Secretary truly thought she alone represented the State's interests on this matter, she presumably would have opposed the State's intervention request. She declined to do so. (Doc. 46 at 2.)

Thus, the State meets all four requirements for intervention of right. Accordingly, the Court "must permit" the State to intervene and its motion is granted.[1]

II. Permissive Intervention

The State also satisfies the requirements for permissive intervention. "On timely motion, the court may permit anyone to intervene who . . . has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B).

---

[1] Rule 24(c) requires that a motion to intervene "be accompanied by a pleading that sets out the claim or defense for which intervention is sought." The State failed to do so. However, the Ninth Circuit has been emphatic that "failure to comply with the Rule 24(c) requirement for a pleading is a purely technical defect which does not result in the disregard of any substantial right." *Westchester Fire Ins. v. Mendez*, 585 F.3d 1183, 1188 (9th Cir. 2009) (quotations omitted). "Courts . . . have approved intervention motions without a pleading where the court was otherwise apprised of the grounds for the motion." *Beckman Indus. Inc., v. Int'l Ins. Co.*, 966 F.2d 470, 474 (9th Cir. 1992).

"[A] court may grant permissive intervention where the applicant for intervention shows (1) independent grounds for jurisdiction; (2) the motion is timely; and (3) the applicant's claim or defense, and the main action, have a question of law or a question of fact in common." *United States v. City of Los Angeles*, 288 F.3d 391, 403 (9th Cir. 2002) (citation omitted). "The district court is given broad discretion to make this determination." *Perry v. Schwarzenegger*, 630 F.3d 898, 905 (9th Cir. 2011).

The first two requirements are easily satisfied. This isn't a case where a party is seeking to intervene so it may assert a claim over which the Court would otherwise lack subject matter jurisdiction. *See generally Hartley Pen Co. v. Lindy Pen Co.*, 16 F.R.D. 141, 146-47 (S.D. Cal. 1954) ("A pending suit within federal jurisdiction is by definition [a] prerequisite to intervention. And it may be stated as a general rule that where intervention is merely permissive, jurisdiction of the intervener's claim—like jurisdiction of a permissive counterclaim—must rest upon independent jurisdictional grounds."). *See also FTC v. Lucaslawcenter "Incorporated,"* 2010 WL 11523682, *6 (C.D. Cal. 2010) (denying motion for permissive intervention because movant sought to "assert[] only state law causes of action" and the movant and adverse party were both "California residents," so "the Court lacks independent jurisdiction pursuant to both 28 U.S.C. §§ 1331 and 1332"). Instead, the State seeks to serve as an additional defendant in a matter that is already properly before the Court under 28 U.S.C. § 1331. (Doc. 1 ¶ 9.) Thus, the State meets the first requirement. And as discussed above, the State's motion is timely, so the second requirement is met, too.

That leaves the third requirement. When determining whether to grant permissive intervention, courts look to:

> [T]he nature and extent of the intervenors' interest, their standing to raise relevant legal issues, the legal position they seek to advance, and its probable relation to the merits of the case, . . . whether the intervenors' interests are adequately represented by other parties, whether intervention will prolong or unduly delay the litigation, and whether parties seeking intervention will significantly contribute to full development of the underlying factual issues in the suit and to the just and equitable adjudication of the legal questions presented.

*Perry,* 630 F.3d at 905 (quoting *Spangler v. Pasadena Bd. of Educ.*, 552 F.2d 1326, 1329 (9th Cir. 1977)). All of these factors favor permissive intervention. As discussed, the State has standing to defend the constitutionality of its election statues, which are at the core of the State's duties as well as at the core of the merits of this case. As it stands, Plaintiffs are currently wanting for actual opposition to their motion—the Secretary and the only county recorder to have participated so far both agree with Plaintiffs and will not oppose their motion. Whatever the merits, without the State, there is a real danger that its interests will go unrepresented and the Court will be forced to render an opinion on an underdeveloped record. Finally, because the State has already agreed to abide by the briefing schedule, there is no risk of undue delay. Were there any chance the State could not intervene as of right, permissive intervention is more than warranted.[2]

## CONCLUSION

Although the Court understands Plaintiffs' objection to the State's intervention request from a tactical standpoint, the issues raised here are too important to be resolved through a one-sided process where all parties agree with each other. Although nothing in this order should be interpreted as prejudgment on the merits, the Court thinks it is essential to the correct resolution of this case that the State be allowed to present a full defense of its statutes and policies.

…
…
…
…
…
…
…
…

---

[2] Plaintiffs do not seriously contest that the State may permissively intervene but argue the Court should exercise its discretion to prevent undue delay. (Doc. 59 at 3, 6-7.) As discussed, this argument is unavailing.

Accordingly, **IT IS ORDERED** that the State of Arizona's motion to intervene (Doc. 46) is **granted**. As set out in a prior order, the State's response to the TRO motion is due no later than **April 10, 2020**.

Dated this 9th day of April, 2020.

_____
Dominic W. Lanza
United States District Judge