**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Arizonans for Fair Elections, et al., | No. CV-20-00658-PHX-DWL |
| Plaintiffs, | **ORDER** |
| v. | |
| Katie Hobbs, et al., | |
| Defendants. | |

On April 4, 2020, Plaintiffs filed a complaint alleging that certain statutes governing Arizona's citizen initiative process, which appear in Title 19 of the Arizona Revised Statutes, impose an unconstitutional inhibition of their First and Fourteenth Amendment rights in light of the state and local responses to the COVID-19 pandemic. (Doc. 1.) Specifically, Plaintiffs allege that the state and local pandemic responses make it impossible to gather the initiative-petition signatures in the manner required by Title 19. (*Id.*) Plaintiffs list Arizona Secretary of State Katie Hobbs (the "Secretary"), who oversees Arizona's elections, as well as each of Arizona's county recorders, who oversee local elections and assist the Secretary with certain statutory duties, as defendants. (*Id.*)

Also on April 4, 2020, Plaintiffs filed a motion for a temporary restraining order ("TRO"), asking the Court to order the Secretary to allow the use of Arizona's "E-QUAL" system to gather petition signatures electronically and to enjoin the Secretary and county recorders from striking any signatures gathered via that system. (Doc. 2.) Plaintiffs sought this order without notice to Defendants, but the Court concluded "this is not the sort of

unusual case where proceeding without notice to the adverse parties would be appropriate." (Doc. 9 at 2.)  The Court instead set a briefing schedule and scheduled a hearing for April 14, 2020.  (*Id.* at 3.)

On April 6, 2020, the State of Arizona, represented by the Arizona Attorney General, moved to intervene in this case pursuant to Rule 24.  (Doc. 46.)  The Court granted that motion.  (Doc. 61.)

On April 8, 2020, while the State's motion to intervene was pending, the Speaker of the Arizona House of Representatives and the Arizona Senate President (collectively, "Proposed Intervenors") moved to intervene.  (Doc. 60.)  Plaintiffs oppose that request. (Doc. 63.)  For the following reasons, Proposed Intervenors' motion will be denied.

**ANALYSIS**

"Rule 24 recognizes two types of intervention: (1) intervention of right; and (2) permissive intervention.  Courts must permit intervention of right, but may permit or deny permissive intervention."  Gensler, 1 Federal Rules of Civil Procedure, Rules & Commentary, Rule 24, at 690 (2020).  Here, Proposed Intervenors seek to intervene under both theories.

I.    Intervention Of Right

Intervention of right is available to anyone who "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." Fed. R. Civ. P. 24(a)(2). Courts in the Ninth Circuit employ a four-part test when analyzing intervention of right:

> (1) the motion must be timely; (2) the applicant must claim a "significantly protectable" interest relating to the property or transaction which is the subject of the action; (3) the applicant must be so situated that the disposition of the action may as a practical matter impair or impede its ability to protect that interest; and (4) the applicant's interest must be inadequately represented by the parties to the action.

*Wilderness Soc. v. U.S. Forest Serv.*, 630 F.3d 1173, 1177 (9th Cir. 2011) (quoting *Sierra Club v. EPA*, 995 F.2d 1478, 1481 (9th Cir. 1993)).  These requirements are broadly

construed, because "a liberal policy in favor of intervention serves both efficient resolution of issues and broadened access to the courts." *Id.* (citation omitted). That said, "[f]ailure to satisfy any one of the requirements is fatal to the application." *Perry v. Proposition 8 Official Proponents*, 587 F.3d 947, 950 (9th Cir. 2009) (emphasis added).

### A.    **Timeliness**

"Timeliness is a flexible concept; its determination is left to the district court's discretion." *United States v. Alisal Water Corp.*, 370 F.3d 915, 921 (9th Cir. 2004). In determining whether a motion to intervene is timely, courts consider: "(1) the stage of the proceeding at which an applicant seeks to intervene; (2) the prejudice to other parties; and (3) the reason for and length of the delay." *Id.* (citation omitted).

Plaintiffs acknowledge that Proposed Intervenors' motion is timely. (Doc. 63 at 3.) Accordingly, the Court need not dwell on this factor—Proposed Intervenors timely filed their motion "at the outset of the litigation." *Sierra Club*, 995 F.3d at 1481.

### B.    **Significant Protectable Interest**

"The 'interest' test is not a bright-line rule." *Alisal Water Corp.*, 370 F.3d at 919. It is a fact-bound inquiry and "no specific legal or equitable interest need be established." *Citizens for Balanced Use v. Mont. Wilderness Ass'n*, 647 F.3d 893, 897 (9th Cir. 2011). In fact, "Rule 24(a)(2) does not require a specific legal or equitable interest . . . . [T]he 'interest' test is primarily a practical guide to disposing of lawsuits by involving as many apparently concerned persons as is compatible with efficiency and due process." *Wilderness Soc.*, 630 F.3d at 1179 (citation and quotation marks omitted). *See also* Gensler, Rule 24, at 700 (noting that the Ninth Circuit does not "rigidly require that the interest derive from a substantive right").

Proposed Intervenors argue they have protectable interest in "upholding the Arizona Constitution and the laws that implement it." (Doc. 60 at 5.) In their view, A.R.S. § 12-1841 imbues them with "the authority to defend the State's interest in upholding the constitutionality of Arizona laws." (Doc. 60 at 5.)

This issue presents a close call. On the one hand, A.R.S. § 12-1841(A) provides

that "[i]n any proceeding in which a state statute . . . is alleged to be unconstitutional, the attorney general and the speaker of the house of representatives and the president of the senate shall be served with a copy of the pleading, motion or document containing the allegation at the same time the other parties in the action are served and shall be entitled to be heard." *Id.* Additionally, subdivision (D) of the statute provides that "[t]he attorney general, the speaker of the house of representatives or the president of the senate, in the party's discretion, may intervene as a party, may file briefs in the matter or may choose not to participate in a proceeding that is subject to the notice requirements of this section." *Id.* Thus, there is some force to the argument that, at least under Arizona law, the House Speaker and Senate President possess a unique stature that resembles that of the Attorney General and distinguishes them from a run-of-the-mill individual legislator whose generalized interest in defending the constitutionality of a statue would be insufficient to confer standing. *Compare Va. House of Delegates v. Bethune-Hill*, 139 S. Ct. 1945, 1951-52 (2019) (the Virginia House of Delegates and its speaker lacked standing to appeal redistricting decision because "Virginia law prescribes" that "[a]uthority and responsibility for representing the State's interests in civil litigation . . . rest *exclusively* with the State's Attorney General" and "Virginia has thus chosen to speak as a sovereign entity with a single voice") (emphasis added).

On the other hand, other courts in this District have rejected the exact argument that Proposed Intervenors advance here, concluding that when the State itself (through the Attorney General) has already intervened to defend the constitutionality of a state election statute, the House Speaker and Senate President lack a sufficiently concrete interest to satisfy the second element of the intervention-of-right test. *Miracle v. Hobbs*, 333 F.R.D. 151, 154-55 (D. Ariz. 2019) ("A.R.S. § 12-1841 does not confer blanket authority upon Proposed Intervenors to defend the constitutionality of a state law—particularly where the attorney general is already defending the law. The Court is similarly unmoved by the highly generalized argument that Proposed Intervenors have an interest in upholding the

constitutionality of the Strikeout Law . . . .").[1]

It is unnecessary to resolve this close question in this case. This is because, as discussed below, Proposed Intervenors cannot satisfy the final element of the intervention-of-right test.

## C.    **Practical Impairment**

"If an absentee would be substantially affected in a practical sense by the determination made in an action, he should, as a general rule, be entitled to intervene." Fed. R. Civ. P. 24, 1966 advisory committee note. This element "follows" from the other factors, *Sierra Club*, 995 F.2d at 1486, and once those factors are satisfied, courts often "have little difficulty concluding that the disposition of [a] case may, as a practical matter, affect" an intervenor's interests. *California ex rel. Lockyer v. United States*, 450 F.3d 436, 442 (9th Cir. 2006).

Here, as noted, the Court does not reach whether Proposed Intervenors have satisfied the "significant protectable interest" element. Because the presence or absence of the "practical impairment" element largely turns on the resolution of the other elements, the Court will also decline to address "practical impairment" and turn to the final element, "inadequate representation."

## D.    **Inadequate Representation**

To satisfy the final requirement of intervention of right, a party must demonstrate that existing parties "may not adequately represent [its] interest." *Citizens for Balanced Use*, 647 F.3d at 898. This requires a "minimal" showing and is satisfied if existing parties' representation of its interest "may be" inadequate. *Id.* To determine adequacy, courts

---

[1]    *See also Planned Parenthood of Wis., Inc. v. Kaul*, 942 F.3d 793, 797 (7th Cir. 2019) ("Wisconsin law . . . provides that 'the legislature may intervene . . . at any time . . . as a matter of right' in an action 'in state or federal court.' This language implies that intervention should be automatic, without any input from the trial court, as long as the conditions for authorization under [Wisconsin law] are met. Wisconsin's courts may apply [the statute] that way, but no one argues that this interpretation can control in federal court. The right to intervene 'is a purely procedural right and even in a diversity suit it is the Federal Rules of Civil Procedure rather than state law that dictate the procedures, including who may intervene, to be followed.' The supremacy of federal procedure is even more pronounced in a case, like this one, arising under the Federal Constitution. The parties agree on this point at least: the statute cannot supplant the Federal Rules of Civil Procedure and make intervention automatic.") (citations omitted).

examine: "(1) whether the interest of a present party is such that it will undoubtedly make all of a proposed intervenor's arguments; (2) whether the present party is capable and willing to make such arguments; and (3) whether a proposed intervenor would offer any necessary elements to the proceeding that other parties would neglect." *Id.* (citation omitted). However, "[w]here [a] party and the proposed intervenor share the same 'ultimate objective,' a presumption of adequacy of representation arises, and the intervenor can rebut that presumption only with a 'compelling showing' to the contrary." *Perry*, 587 F.3d at 951 (citation omitted).

Proposed Intervenors' interest here is in "upholding the Arizona Constitution and the laws that implement it." (Doc. 60 at 5.) The State, represented by the Attorney General, advanced an interest in "defending the constitutionality of its laws" and "structuring its elections." (Doc. 46 at 4-5.) It is difficult to see how Proposed Intervenors' interest diverges from the State's, and the State is already a party to this case. (Doc. 61.) In other words, "it is apparent that the ultimate objective" of the Proposed Intervenors and the State is identical—"defending the constitutionality" of state laws. *Perry*, 587 F.3d at 951. Proposed Intervenors, then, must make a "compelling showing" that the State will inadequately represent their interests. *Id.* at 952.

This is an "unenviable task," *Planned Parenthood of Wis., Inc. v. Kaul*, 942 F.3d 793, 801 (7th Cir. 2019), that Proposed Intervenors fail to accomplish. They contend that "it is unclear whether the [Attorney General] will make the same arguments as the Speaker and President." (Doc. 60 at 6. *See also* Doc. 69 at 2 [speculating that the State's "substantive positions may be different" from Proposed Intervenors' but failing to provide any examples of such differences].) But a mere disagreement over the best way to approach litigation is insufficient to meet the "compelling showing" necessary to demonstrate inadequate representation when interests have aligned. *Perry*, 587 F.3d at 954-55. *Cf. Kaul*, 942 F.3d at 799-803.

Proposed Intervenors also argue that the "necessity of their intervention to defend the constitutionality of state laws" has been repeatedly demonstrated through "practical

experience." (Doc. 60 at 5.)  To bolster this point, they cite *Horne v. Flores*, 557 U.S. 433 (2009), where legislative officers were allowed to intervene because "the principal defendants in the action sid[ed] with the plaintiffs."  *Id.* at 443.  But intervention in that case "was vital to the defense of the law at issue because, among other things, the attorney general failed to appeal the court's judgment, as well as injunctions and related orders issued in support of that judgment."  *Miracle*, 333 F.R.D. at 155.  Proposed Intervenors "demonstrate no such deficiencies in the present case," as the State has shown it is more than willing to defend this lawsuit.  *Id.*  Similarly, *Karcher v. May*, 484 U.S. 72 (1987), involved a situation where the "Attorney General immediately announced that he would not defend the statute" at issue.  *Id.* at 75.  That is not the case here.  *Cf. Kaul*, 942 F.3d at 800 ("In fact, *every* decision the Legislature cites as favorable authority involves a situation in which a legislature intervened once the governmental defendant's default representative had dropped out of the case. . . .  Moreover, none discusses the propriety of intervention under Rule 24 but merely recognized that intervention had occurred.").

> E.     **Conclusion**

In sum, Proposed Intervenors have failed to satisfy at least one of the four requirements to intervene of right.  Accordingly, their motion to intervene under Rule 24(a) must be denied.

II.     Permissive Intervention

Proposed Intervenors also seek permissive intervention.  "On timely motion, the court may permit anyone to intervene who . . . has a claim or defense that shares with the main action a common question of law or fact."  Fed. R. Civ. P. 24(b)(1)(B).  "[A] court may grant permissive intervention where the applicant for intervention shows (1) independent grounds for jurisdiction; (2) the motion is timely; and (3) the applicant's claim or defense, and the main action, have a question of law or a question of fact in common." *United States v. City of Los Angeles*, 288 F.3d 391, 403 (9th Cir. 2002) (citation omitted). "The district court is given broad discretion to make this determination." *Perry v. Schwarzenegger*, 630 F.3d 898, 905 (9th Cir. 2011).  As such, "[e]ven if an applicant

satisfies those threshold requirements, the district court has discretion to deny permissive intervention." *Donnelly v. Glickman*, 159 F.3d 405, 412 (9th Cir. 1998). When determining whether to grant permissive intervention, courts look to:

> [T]he nature and extent of the intervenors' interest, their standing to raise relevant legal issues, the legal position they seek to advance, and its probable relation to the merits of the case, . . . whether the intervenors' interests are adequately represented by other parties, whether intervention will prolong or unduly delay the litigation, and whether parties seeking intervention will significantly contribute to full development of the underlying factual issues in the suit and to the just and equitable adjudication of the legal questions presented.

*Spangler v. Pasadena Bd. of Educ.*, 552 F.2d 1326, 1329 (9th Cir. 1977).

In light of these considerations, the Court declines to grant permissive intervention. Proposed Intervenors' interests align with the State's, and the Court doesn't see how Proposed Intervenors can more adequately defend state laws than the State itself. In the same vein, Proposed Intervenors' participation is unnecessary to the full development of this case.

Nevertheless, in the interest of effectuating the policies underlying A.R.S. § 12-1841, Proposed Intervenors are granted permission to file an amicus brief if they wish to do so. *See also Miracle*, 333 F.R.D. at 156-57 (same).

Accordingly, **IT IS ORDERED** that Proposed Intervenors' motion to intervene (Doc. 60) is **denied**.

**IT IS FURTHER ORDERED** authorizing Proposed Intervenors to file an amicus brief.

Dated this 10th day of April, 2020.

Dominic W. Lanza
United States District Judge