Roy Herrera (#032901)
herrerar@ballardspahr.com
Daniel A. Arellano (#032304)
arellanod@ballardspahr.com
Jillian L. Andrews (#034611)
andrewsj@ballardspahr.com
BALLARD SPAHR LLP
1 East Washington Street, Suite 2300
Phoenix, AZ 85004-2555
Telephone: 602.798.5400
Facsimile: 602.798.5595
*Attorneys for Defendant Katie Hobbs,
 Arizona Secretary of State*

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Arizonans for Fair Elections (AZAN), an Arizona nonprofit corporation; Arizonans Fed Up with Failing Healthcare (Healthcare Rising AZ), an Arizona nonprofit corporation; and Randi L. Turk, an individual,<br><br>Plaintiffs,<br><br>vs.<br><br>Katie Hobbs, Arizona Secretary of State, et al.<br><br>Defendants. | No. CV-20-00658-PHX-DWL<br><br>**RESPONSE OF ARIZONA SECRETARY OF STATE KATIE HOBBS TO MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION** |

## INTRODUCTION

In light of the current public health emergency, Katie Hobbs, in her official capacity as Arizona Secretary of State, does not oppose the narrow relief sought by Plaintiffs for this election year: access to the E-Qual system to electronically collect signatures for statewide initiative petitions, just as some candidates already do for nomination petitions.

Indeed, the Secretary believes that such relief would further the public interest by protecting public health while facilitating the continuity of democratic processes—here, Arizonans' fundamental constitutional right to legislate by initiative—in the midst of an unprecedented global pandemic. Should the Court grant the relief that Plaintiffs request, the Secretary stands ready to begin implementing the necessary modifications to the E-Qual system to allow qualified voters to electronically sign statewide initiative petitions but requests that the Court place certain limitations on the relief to minimize administrative burden under the current circumstances.

## FACTUAL BACKGROUND

### I. The Initiative Process in Arizona.

Arizona's Constitution grants its citizens the power to propose laws and constitutional amendments through initiative. Ariz. Const. art. IV, Pt. 1 § 1(1). Statewide initiative petitions must be filed with the Arizona Secretary of State no later than four months before the election at which the measure will be voted upon. *Id.* § 1(4). Initiative petitions for statutory changes must be signed by at least ten percent of the total number of all votes cast in the most recent gubernatorial election, and petitions for constitutional amendments must be signed by at least 15 percent. *Id.* § 1(2). This year, the signature minimums are 237,645 and 356,467, respectively, and the deadline to submit petitions is July 2, 2020. *See* https://azsos.gov/elections/initiative-referendum-and-recall.

To begin the process of circulating petitions, an initiative proponent must file with the Secretary a statement of organization to register as a political committee and an application for a petition serial number, including with the application a copy of the text of the measure and a 100-word summary of its principal provisions. A.R.S. § 19-111(A). Upon receipt of these materials, the Secretary assigns an official serial number to the petition, which must appear on the lower right-hand corner of each copy of the petition. A.R.S. § 19-111(B).

Signature sheets, a template of which is provided by the Secretary, must be printed on legal-sized paper and must include a descriptive title of the initiative, a 100-word

2

summary, the petition serial number, and an indication whether the circulator is paid or is a volunteer. A.R.S. §§ 19-102, 19-121(A). The signature sheets must be attached at all times during circulation to a full and correct copy of the title and text of the measure. A.R.S. § 19-112(B). Only qualified electors may sign and must do so in the presence of the circulator. A.R.S. § 19-112(A). The circulator must sign an affidavit (printed on the back of the signature sheet) before a notary public, subscribing and swearing that: (i) each of the names on the sheet was signed and the name and address were printed by the elector on the date indicated; (ii) in his or her belief, each signer was a qualified elector of the applicable county on the date indicated; and (iii) at all times during circulation of the signature sheet, a copy of the title and text was attached to the signature sheet. A.R.S. § 19-112(C).

Once signature circulation is complete, the initiative proponent files the petition sheets by tendering them to the Secretary, who then issues a receipt indicating the estimated number of purported signatures and sheets. A.R.S. § 19-121(B). Once a receipt is issued, no additional petition sheets may be accepted for filing. *Id.*

Upon filing of the petition, the Secretary has 20 days to conduct a review and to remove in their entirety any deficient petition sheets (*e.g.*, those not attached to a copy of the title and text of the measure) and strike through any individual signatures missing any accompanying required information (*e.g.*, an address or date). A.R.S. § 19-121.01(A). The Secretary must then randomly select 5% of the total signatures for verification by the County Recorders. A.R.S. § 19-121.01(B). Once the Secretary sends the random samples to the County Recorders, the Recorders have 15 days to verify the signatures and the electors' eligibility and then certify to the Secretary which signatures were disqualified, along with the overall disqualification rate. A.R.S. § 19-121.02. The Secretary then has 72 hours to determine the total number of valid signatures based on the Secretary's initial review and the County Recorders' signature verification. A.R.S. § 19-121.04(A). If the remaining valid signatures equal or exceed the minimum amount required by the Constitution, the Secretary notifies the proponent committee and the Governor that the

initiative will be placed on the ballot. A.R.S. § 19-121.04(B). If the remaining valid signatures do not satisfy the constitutional minimum, the Secretary notifies the proponent that the initiative will not be placed on the ballot. A.R.S. § 19-121.04(C).

## II.     The E-Qual System.

Candidates for public office in Arizona must submit nomination petitions with a required number of signatures from qualified electors. A.R.S. § 16-314(B). The Secretary is statutorily vested with the authority to create a secure internet portal by which state and federal candidates can create, use, and submit petitions in electronic form for qualified electors to sign electronically. A.R.S. §§ 16-316, 16-318.[1] Those statutes require that the system provide a method to verify the identity and eligibility of qualified electors who sign a petition. *Id.*

Pursuant to these statutes, the Secretary has developed an electronic platform for signature collection called E-Qual. The E-Qual system allows for qualified voters to sign nomination petitions for federal, statewide, and legislative candidates through a secure internet portal that properly verifies the voter's identity and eligibility to sign a particular petition. Dul Decl. at 2 ¶¶ 3, 8-10. Candidates may choose to use E-Qual instead of collecting signatures on hard-copy petition forms or as a supplement to their hard-copy signatures. *Id.* at 2 ¶ 3. In order to use E-Qual to collect signatures electronically, candidates must first create an account in the Secretary of State's Candidate Portal. *Id.* at 3 ¶ 5. Candidate Portal enables candidates to create an E-Qual petition, upload nomination paperwork, and populate their online profile, which will be displayed on the Secretary of State's elections website once the candidate qualifies for the ballot. *Id.* When a candidate clicks "Create E-Qual Petition" in Candidate Portal, the candidate is prompted to review and approve the information in the petition caption. *Id.*

Once a candidate has created their E-Qual petition, the candidate can circulate the

---

[1] The Secretary also is tasked with making the electronic system available to local candidates, but that system is still under development due to the logistical complexities of accommodating numerous jurisdictions' election systems and providing the necessary training and administrative support for local filing officers and candidates. A.R.S. § 16-317; Dul Decl. at 5 ¶ 4.

4

weblink to voters to sign the petition. *Id.* at 3 ¶ 6. An eligible voter may also access a candidate's E-Qual petition by going directly to the E-Qual website and viewing the petitions available for that voter to sign. *Id.* When a candidate is ready to file their nomination paperwork, the candidate will log in to their Candidate Portal account, "close out" their E-Qual petition, print the petition, and sign the cover page which contains a circulator statement. *Id.* at 3 ¶ 7. The printed E-Qual petition lists each signer's printed name, actual residence address, date of signing, and voter identification number and enters "/S/" followed by the voter's first name and last name into the signature field. *Id.* at 3–4 ¶ 7. The candidate must print and file the E-Qual petition and signed cover page with the Secretary's office by the filing deadline for their E-Qual signatures to apply to their total signature count. *Id.* at 4 ¶ 7.

Registered voters who wish to sign a petition electronically through E-Qual must first authenticate their identity by entering into the log-in screen the voter's name and date of birth, and either the voter's: (i) Arizona driver's license number, *or* (ii) voter identification number and last four digits of the voter's Social Security number. *Id.* at 4 ¶ 8. The information provided must match the voter's registration record in order for the voter to log in to E-Qual and sign petitions electronically. *Id.*

In addition to verifying the voter's identity by authenticating the voter's identifying information at log-in, E-Qual interfaces with the statewide voter registration system—the Arizona Voter Information Database (AVID)—to verify the voter's registration status and assigned districts, and to determine the petitions the voter is eligible to sign. *Id.* at 4 ¶ 9. If E-Qual is unable to authenticate eligibility to sign because the person is not registered to vote or their registration status does not make them a qualified signer, a notification message is displayed and the user will not be able to access the system. *Id.* Because E-Qual verifies that a person is properly registered, resides in the correct district to be qualified to sign a particular petition, and is otherwise eligible to sign that petition, E-Qual signatures are generally counted as valid without further review by the filing officer or the County Recorder unless a court challenge is filed and the specific signature is challenged.

5

*Id.* at 4 ¶ 10.

## III. Feasibility of Making E-Qual Available to Statewide Initiative Measures.

If the Court were to order that the Secretary allow Plaintiffs to use the E-Qual system to electronically collect signatures for statewide initiative petitions this year, the Secretary's office estimates that it could develop and implement such functionality in about four weeks' time. *Id.* at 4 ¶ 11. It is feasible to create a statewide initiative petition in E-Qual, the layout of which would be populated with the necessary data about the initiative—including the serial number and full title and text of the measure—that is already captured in the Secretary's systems and is displayed on the Secretary's website. *Id.* at 5 ¶ 12. An initiative committee could be provided with credentials to manage its E-Qual petitions similar to how candidates manage their nomination petitions in the system. *Id.* at 5 ¶ 13. The committee could share a weblink to the petition with electors who could then access and sign the petition electronically after providing identifying information that verifies their identity and is checked against AVID to verify their eligibility to sign the E-Qual petition. *Id.* When the initiative committee is ready to file the petition, it would simply close out the E-Qual petition, at which point the system will generate a circulator coversheet and PDF list or CSV file of the first and last name, residential address, date of signing, and voter identification number for each voter who signed the petition. *Id.*

The list of E-Qual signers and signed circulator coversheet could then be filed with the Secretary's Office along with any signatures collected on hard-copy petition sheets. *Id.* Once the petition is closed out and the PDF list or CSV file of signers is created, voters can no longer sign the petition, nor can the petition be re-opened. *Id.*

## ARGUMENT

### I. The Secretary Does Not Oppose the Narrow Relief Plaintiffs Seek and Can Implement Necessary Changes to E-Qual If Ordered by the Court.

The COVID-19 pandemic has necessitated drastic adjustments to many facets of life in Arizona over the last several weeks, and these adjustments will likely continue for at least the next several months. In light of the unprecedented challenges created by the current public health emergency and the known risks inherent to in-person interactions, the

Secretary does not oppose Plaintiffs' request that they be permitted to electronically collect signatures for statewide initiative petitions through E-Qual in advance of the July 2, 2020 filing deadline. Rather, the Secretary believes that such relief would further the public interest by protecting public health while facilitating the continuity of democratic processes—here, Arizonans' constitutional right to legislate by initiative.

Should the Court grant the relief that Plaintiffs request, the Secretary can implement the necessary modifications to the E-Qual system to allow qualified voters to electronically sign statewide initiative petitions this year. As detailed above, the E-Qual system is currently available for federal, statewide, and legislative candidates to electronically collect nomination petition signatures. Expanding E-Qual to allow for electronic signature collection for statewide initiatives can be accomplished in approximately four weeks. Dul Decl. at 4 ¶ 11. Because the E-Qual system interfaces with the statewide voter registration database to verify voter identity and eligibility to sign a given petition, the system obviates the need to manually verify the identity and registration status of those who sign an E-Qual petition. *Id.* For these reasons, the Secretary does not oppose Plaintiffs' requested relief.

## II. If the Court Grants Plaintiffs' Request, the Secretary Requests Three Limitations to Limit Administrative Burden and Protect the Safety of the Secretary's Staff.

While the Secretary does not oppose Plaintiffs' request to be allowed to use E-Qual to collect signatures for statewide initiatives in light of the extraordinary circumstances created by the current public health emergency, the Secretary respectfully requests that, if the Court were to order such relief, it impose three limitations to avoid imposing undue administrative burden on the Secretary's office and help protect the safety of the Secretary's staff. The Court has "broad latitude in fashioning equitable relief," *High Sierra Hikers Ass'n v. Blackwell*, 390 F.3d 630, 641 (9th Cir 2004) (internal quotation marks omitted), and can provide a remedy that is "no more burdensome to the [Secretary] than necessary to provide complete relief to the plaintiffs before the court." *L.A. Haven Hospice, Inc. v. Sebelius*, 638 F.3d 644, 664 (9th Cir. 2011) (internal quotation marks omitted).

7

Specifically, for the reasons detailed below, if the Court were to grant Plaintiffs' requested relief, the Secretary requests that the Court's order: (i) limit relief to those initiatives that have already applied for a petition serial number as of the filing of this lawsuit; (ii) require initiative committees to submit, upon the creation of their E-Qual petition, all signatures collected on paper petition sheets up to that date, and allow those committees one supplemental filing, including E-Qual and/or traditional signatures, by the July 2, 2020 deadline; and (iii) specify whether the 5% sample of signatures required by A.R.S. § 19-121.01(B) to be randomly drawn from all signatures submitted for a petition should include E-Qual signatures or only those signatures submitted on a hard-copy petition sheet.

### A. Limiting Relief to Already-Active Initiative Measures.

While implementing the necessary technical functionality to make E-Qual available to initiative measures would be a one-time requirement that is feasible, maintaining and supporting a large number of individual E-Qual petitions for statewide initiative measures could present significant workload and infrastructure challenges. Dul Decl. at 6 ¶ 15. The number of signatures at issue for even a few statewide initiative measures could dwarf that for all candidate petitions historically handled by the system by several orders of magnitude. For example, in the 2020 candidate filing period that just ended, 226 candidates filed nomination petitions with the Secretary's office and qualified for the ballot. *Id.* Over half of those candidates filed fewer than 1,000 signatures and, altogether, the 226 candidates filed approximately 338,000 signatures, only about 17% of which were E-Qual signatures. *Id.* By comparison, a single statewide statutory initiative measure requires 237,645 signatures to qualify for the ballot; a constitutional measure requires 356,467 signatures. *Id.*

The Secretary anticipates needing to bring on additional webservers to support the expanded workload, and the system would need to support additional workload for each additional statewide measure that is allowed to collect signatures on E-Qual. *Id.* In addition to the infrastructure demands, each additional statewide initiative with an E-Qual

8

account will require staff time to on-board the new initiative committee and provide troubleshooting and support as issues arise with specific petitions. *Id.* The more initiative petitions there are with E-Qual accounts, the higher the demands for such support will be, and the higher the burden for the Secretary's staff. *Id.*

As a result, an order that the Secretary make E-Qual available to statewide initiative measures should be limited to those initiative measures that have applied for a petition serial number as of the filing of this lawsuit. Doing so would enable the Secretary to develop and implement the necessary systems feasibly while limiting accommodation to a discrete number of measures (encompassing each Plaintiff in this case) and avoiding the administrative burden of onboarding and supporting currently unknown numbers of new initiative measures. Such a limit would also ensure fairness by making relief available to Plaintiffs and those committees that have been active in, and expended resources on, collecting signatures and could not have anticipated or planned for the exigencies of the COVID-19 pandemic.

### B. Requiring Submission of Paper Petitions Upon Creating an E-Qual Petition.

In addition, if the Court were to grant Plaintiffs' requested relief, the Secretary respectfully requests the Court also require initiative measures that wish to utilize the E-Qual system to submit, upon their creation of their E-Qual petition, all signatures collected on paper petitions up to that date, and allow those committees to submit one supplemental filing, including E-Qual signatures and any additional traditional signatures gathered after creation of the E-Qual petition, by the July 2, 2020 filing deadline. This would be notwithstanding A.R.S § 19-121(B), which provides that an initiative petition is deemed filed once petition sheets are tendered to the Secretary and may not thereafter be supplemented with additional petition sheets.

Providing for such staggered submission, and having the final, supplemental filing or the filing deadline (whichever is earlier) trigger the start of the 20-day period for the Secretary to complete her processing duties, would enable the Secretary's staff to process the paper petition sheets in a manner that complies with current public health

9

recommendations on social distancing and allow them to complete initial processing in a timely manner despite reduced staffing in the office due to COVID-19. Indeed, in light of public health directives and recommendations, most of the Secretary's staff have been transitioned to teleworking, particularly those most vulnerable or with caretaker or childcare needs. Dul Decl. at 7 ¶ 17.

Once a statewide initiative proponent files its petition and the hundreds of thousands of necessary signatures, the Secretary ordinarily would have only 20 days to process the petition sheets and conduct the initial review required by Arizona law. A.R.S. § 19-121.01(A). During this process, the Secretary's staff must: receive the hard-copy petitions, de-staple each petition sheet from the title and text of the measure, conduct an initial review of petition sheets for deficiencies that disqualify an entire sheet, separate wholly disqualified petition sheets from the sheets that need to be scanned into the petition review software for review of individual signature lines, bates-number all sheets, and scan all sheets into the system. Dul Decl. at 7 ¶ 18. These are all time- and labor-intensive tasks that cannot be done remotely. *Id.* And this is all before each individual signature can be reviewed through a petition review software. If all petition sheets were filed at once on or near the July 2, 2020 deadline, the Secretary anticipates needing up to 60 staff, including temporary staff, in the office at once—in close proximity to one another and contrary to public health recommendations—to timely process the petitions within the statutory 20-day period. *Id.*

**C. Specifying Whether 5% Sample Shall Include E-Qual Petitions.**

Finally, the Secretary notes that, following the 20-day initial review period for filed initiative petitions, she must randomly select 5% of the total signatures for verification by the County Recorders, who then have 15 days to verify the identity and eligibility of signers in the samples they receive. A.R.S. §§ 19-121.01(B), 19-121.02(A). As discussed above, the E-Qual system, by interfacing with the statewide voter registration database, verifies the identity and eligibility of voters who sign an E-Qual petition, obviating the need to verify those signatures again after the fact. Still, the Secretary takes no position on whether

the 5% sample should be selected from all signatures (including those collected through E-Qual) or only those collected through traditional paper means.

In any event, the Secretary asks that any order from this Court address how the sample is to be taken to avoid any ambiguity or dispute on this matter in the future. Indeed, County Recorders have already indicated differing views on this: the Pinal County Recorder's response suggests that E-Qual petitions need not be verified by the County Recorder because the E-Qual system already verifies identity and eligibility to sign (Doc. 65), while the Maricopa County Recorder's response suggests that it remains within the province of County Recorders to verify E-Qual petition signatures (Doc. 62).

## CONCLUSION

To protect public health while ensuring the continuity of democratic processes in the face of the extraordinary circumstances created by COVID-19, the Secretary does not oppose the narrow relief sought by Plaintiffs for this election year and can implement necessary modifications to the E-Qual system if ordered by the Court.  If the Court grants the relief sought by Plaintiffs, however, the Secretary asks that the Order provide:

- That relief is available only to Plaintiffs and those initiative measures that have already applied for a petition serial number by the filing of this lawsuit;
- That, notwithstanding A.R.S § 19-121(B), initiative measures electing to use E-Qual must submit their paper signature sheets upon their creation of an E-Qual petition, and may supplement their signatures once before the July 2, 2020 filing deadline, with the supplemental filing or the filing deadline (whichever is earlier) triggering the 20-day period for the Secretary to process the petition and submit a 5% random sample to the County Recorder for verification; and
- Clarification whether the 5% sample required under A.R.S. § 19-121.01(B) is to be randomly drawn from all signatures submitted for a petition (including E-Qual signatures) or only those submitted on a paper signature sheet.

RESPECTFULLY SUBMITTED this 10th day of April, 2020.

          BALLARD SPAHR LLP

By: */s/ Roy Herrera*
    Roy Herrera
    Daniel A. Arellano
    Jillian L. Andrews
    1 East Washington Street, Suite 2300
    Phoenix, AZ 85004-2555
    *Attorneys for Defendant Katie Hobbs,*
    *Arizona Secretary of State*

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 10th day of April, 2020, I electronically transmitted the foregoing document to the U.S. District Court for the District of Arizona Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to all CM/ECF registrants.


*/s/ Javaughn Salas*

Ballard Spahr LLP
1 East Washington Street, Suite 2300
Phoenix, AZ 85004-2555
Telephone: 602.798.5400

13