1

2

3

5

6

IN THE UNITED STATES DISTRICT COURT

7

FOR THE DISTRICT OF ARIZONA

8

9 | Arizonans for Fair Elections (AZAN); et al.,

Case No:

10 |                  Plaintiffs,

**AFFIDAVIT OF CHRISTOPHER GALLAWAY**

11 |        v.

12 | Katie Hobbs, Arizona Secretary of State; et al.,

13 |                  Defendants.

14

**State of Missouri**          )
                              ) ss:
15

**County of St. Louis)**

16

I Christopher Gallaway, being duly sworn, hereby depose and state the following:

17

1.    I am over 18 years of age and have personal knowledge of the facts stated

18

herein.

19

2.    I am a Member of FieldWorks, LLC ("FieldWorks"), which provides

20

campaign-related services to clients seeking to place initiatives on the ballot for voting by

21

the electorate.

22

1

3.      FieldWorks provides clients with the management, operations, signature gathering, and other services to qualify the client's measure for the ballot.

4.      I have fourteen years of experience as a professional petition circulation manager and consultant in several states.

5.      In Arizona, FieldWorks has been successful assisting clients qualify their initiatives for the ballot.

6.      On 7/1/2019, Arizonans Fed Up With Failing Healthcare (Healthcare Rising AZ)'s sponsor contracted withFieldWorks to assist with its ballot initiative Stop Surprise Billing and Protect Patients Act.

7.      On 1/27/2020 Arizonans for Fair Elections (AzAN) hired FieldWorks to assist with its ballot initiative Fair Elections Act.

8.      For clarity, I refer to both clients collectively as "Ballot Initiative Committees".

9.      Both Ballot Initiative Committees seek to qualify their respective measures for the November 3, 2020 General Election ballot.

10.     I am familiar with Arizona law related to the signature requirements to qualify an initiative for the ballot.

11.     To qualify for the November 3 General Election ballot, the Ballot Initiative Committees, as any other individual or organization seeking to qualify their initiative on the ballot, must gather 237,645 signatures from qualified electors.  Pursuant to the Arizona Constitution, the number of signatures required is based on the number of votes

2

1  cast for all candidates for governor at the general election last preceding the filing of the

2  initiative petition.

3       12.    Aside from the extraordinary task of obtaining several hundred thousand

5  signatures, the requirements to qualify the initiative for the ballot are extensive and strict.

6       13.    First and foremost, Arizona law requires that the elector sign the petition in

7  the presence of the circulator.

8       14.    The circulator must also subscribe and swear on an affidavit before a notary

9  public that the signatures were obtained in his or her presence, among other attestations

10  related to the proper gathering of signatures as required by law.

11       15.    The petition signature sheets and affidavits must be filed with the Secretary

12  of State (the "Secretary") no later than July 2, 2020 for the November 3 General Election.

13       16.    After the signature sheets are filed with the Secretary, the Secretary

14  engages in an extensive, multileveled process to verify the validity of the sheets and

15  signatures.

16       17.    First, the Secretary reviews the sheets for proper formatting, content, and

17  other technical requirements placed on the sheets.  Any sheets that do not comply with

18  these requirements are eliminated and the signatures thereon do not count toward the

19  237,645-signature requirement.

20       18.    Second, the Secretary reviews each sheet to determine the county of the

21  majority of the signers.  Signatures from electors who are from counties other than the

22  county of the majority of the signers on that sheet are stricken and do not count toward

the signature requirement.

3

19.    Third, for the remaining sheets, the Secretary strikes all signatures that cannot be verified based on additional criteria.

20.    The three-step review of sheets and signatures summarized above inevitably eliminates sheets and signatures.

21.    Once those sheets and signatures are removed, the Secretary counts the remaining signatures and notifies the applicant (the ballot initiative committee) of the total number of signatures eligible for verification.

22.    In order to proceed to the signature verification process, however, the remaining signatures must meet the required number of signatures.  Otherwise the initiative petition does not advance at this point.

23.    In verifying the signatures, the Secretary will select at random 5% of the total signatures eligible by county and submits the signatures to the respective county recorders for verification.

24.    The county recorders must determine which signatures of individuals should be disqualified based on additional criteria and certify to the Secretary the number of disqualified signatures.

25.    Finally, after this extensive and multileveled process, the Secretary must issue a receipt to the ballot initiative committee with an accounting of the number of signatures disqualified and confirm whether the signature requirement was met or not.

26.    Understandably, ballot initiative committees must gather substantially more than the required number of signatures to survive the elimination and disqualification process.

4

1    27.    In my experience, ballot initiative committees should obtain one and a half

2    to two times the number of required signatures to account for signature sheets that may

3    be eliminated and signatures that may be stricken for deficiencies.  In this case, it means

5    that the Ballot Initiative Committees should obtain between 356,468 to 475,290

6    signatures.

7    28.    FieldWorks has recruited, vetted, and trained professional circulators to

8    gather signatures for both clients on their respective initiative petitions to assist them in

9    meeting this extraordinary task.

10    29.    The Ballot Initiative Committees have made significant financial

11    commitments to FieldWorks, including significant payments for services to be performed

12    for the duration of the 2020 signature-gathering process.

13    30.    To meet their requirement, FieldWorks relies on venues which attract large

14    numbers of individuals in order to engage with a high volume of potential petition

15    signers.  These venues include sporting events, parades, fairs, festivals, concerts,

16    libraries, busy government offices, such as courthouses, crowded urban areas outside

17    malls, restaurants, and bars where large number of individuals congregate, and other

18    large social and recreational functions which attract large numbers of individuals.

19    31.    In my experience, petition circulation strategies which rely on door-to-door

20    circulation or other methods which do not engage with concentrated gatherings of

21    individuals are insufficient to collect the large number of signatures required to qualify a

22    petition for the ballot.

32.    By the week of February 22, 2020, FieldWorks, on behalf of each Ballot Initiative Committee, was in full swing gathering signatures and ahead of schedule to meet the goals for obtaining a sufficient number of signatures.

33.    The COVID-19 pandemic surfaced in the midst of the signature gather efforts.

34.    FieldWorks began to take precautions with their circulators, including requiring workers who were sick, or appeared to be sick to stay home, maintain social distancing during our daily training sessions and announcements, providing hand sanitizer to our teams and making staff wash their hands on arrival and departure from the office.However, the signature-gathering process continued to comply with the requirement that the elector sign in the presence of the circulator.  Failing to comply with this requirement prohibits the circulator from attesting to this fact before a notary public, and this failure leads to the elimination of signatures by the Secretary.

35.    On March 11, 2020, the Governor of Arizona issued a Declaration of Emergency and Executive Order concerning the COVID-19 pandemic.  By this point, strong recommendations were in place by the federal and State government and medical experts that people quarantine, self-isolate, and practice social-distancing when out in public.  The social-distancing requirement is that people maintain at least a six-foot separation from each other.

36.    With the recommendations for social-distancing in place, FieldWorks the efficiency and speed of gathering signatures declined further.

37.     Moreover, by this point all large social gatherings, such as concerts, sporting events, festivals, and libraries had been canceled or closed.  The governments recommendation was that any gathering of more than 10 people had to be canceled. Furthermore, restaurants were ordered to provide take-out services only, forbidding the congregation of people within the restaurants.  This eliminated all opportunity for FieldWorks to gather signatures at events and places with large number of people.

38.     Obviously, when a circulator is interacting with a potential signer, the circulator and signer come close together, likely in a face-to-face encounter, for the circulator to provide information on the initiative and request a signature.  Moreover, material is exchanged in this process.  The circulator carries the initiative text along with the signature pages on a clip board, and this material, along with a pen for signing, is passed from the circulator to the signer.  If a signer or circulator unknowingly happens to be a carrier of the COVID-19 virus, this process puts the individuals at risk of transmission and clearly violates the social-distancing preventive measure.

39.     The social-distancing recommendation in effect froze the ability of circulators to obtain signatures from electors.

40.     On March 30, 2020, the Governor of Arizona issued an order that people stay at home and only leave their home for essential activities, such as grocery food shopping and attending work in the performance of specifically identified essential functions.  Although not specifically restricted by the order, the activity of public signature gathering clearly poses a risk of transmission and infection of the COVID-19 virus.

7

41.     It goes without saying that FieldWorks values the health and wellbeing of its circulators and would not want to jeopardize their health even in the absence of a stay-at-home order.  By protecting the health of its circulators, FieldWorks is also protecting the health of the community as a whole.

42.     On average, trained circulators can collect 45 to 50 signatures per shift. This is based on 5.5. hours spent in the filed per shift.  FieldWorks had 838 circulators throughout Arizona gathering signatures for the Ballot Initiative Committees. \On a weekly basis, FieldWorks was averaging just under 20,000 signatures for each Ballot Initiative Committee.

43.     As of March 11, 2020, when the social-distancing requirements when into effect and all large public gatherings had been canceled, FieldWorks had collected 265,017 signatures for Arizonans Fed Up with Failing Healthcare and 80,132 for Arizonans for Fair Elections.

44.     After March 11, 2020, FieldWorks has not been able to collect more than an average of less than 60 signatures per shift for each Ballot Initiative Committee.  This significant drop in signature attainment is a direct result of the requirement that signatures be obtained in the presence of the circulator and the social-distancing measures in place to prevent the transmission of COVID-19.

45.     Since the March 30, 2020, stay-at-home order effectively requiring Arizonans to stay at home, FieldWorks will not be able to obtain any signatures.

46.     The stay-at-home order is effective through April 30, 2020.

8

47. Between March 11 and April 30, FieldWorks could have gathered an average of 160,000 signatures per initiative campaign, a substantial amount required to be on track for the July 2 deadline.

48. It is not feasible to make up the loss of signatures after the stay-at-home order is lifted on April 30, if it is lifted at all by that date. The spread of COVID-19 continues to increase, and the stay-at-home order is subject to extension if the pandemic continues to grow.

49. Based on the uncertainty of FieldWorks' ability to return to the field to collect signatures as required by Arizona law, FieldWorks may not be able to obtain the necessary number of signatures.

50. Arizona law provides for the submission of electronic signatures for candidates seeking to be placed on the ballot. The Secretary administers and oversees the website, apps.azsos.gov/equal/ ("E-Qual"), that is used for the submission of electronic signatures from qualified electors in support of candidate petitions. It is my understanding that the Secretary, via the E-Qual, ensures that only qualified electors submit signatures.

51. The E-Qual process can be used during the pandemic to ensure the people's right to sign initiative ballots is not frozen by the stay-at-home order and social-distancing measures. Without such a measure, it is likely that the ballot initiatives will not obtain the necessary number of signatures by July 2, and they will not qualify for the ballot, depriving the people of their right to legislate by initiative.

1

2          FURTHER AFFIANT SAYETH NAUGHT.

3

5          _____
           Christopher Gallaway
6          FieldWorks, LLC

7

8

9

10

11   Sworn and subscribed to before me this  1st  day of April, 2020.

12
     _____                    NICHOLAS BOWENS
13   Notary Public                               Notary Public - Notary Seal
                                                    STATE OF MISSOURI
14   My commission expires on:  10. 21. 2023      Comm. Number 15381182
                                                       St. Louis County
15                                            My Commission Expires: 10/21/2023

16

17

18

19

20

21

22

                              10

1

2

**CERTIFICATE OF SERVICE**

3

        I hereby certify that on April 12, 2020 I electronically transmitted the attached

4

document to the Clerk's Office using the CM/ECF System for filing, and transmitted a
copy to the follow parties via email.

5

6
Joseph Young

7
Deputy County Attorney
Apache County Attorney's Office

8
P.O. Box 637

9
St. Johns, AZ 85936
JYoung@Apachelaw.net

10
*Attorney for Defendant Edison Wauneka, Apache County Recorder*

11

Britt W. Hanson

12
Deputy County Attorney
Cochise County Attorney's Office

13
bhanson@cochise.az.gov

14
*Attorney for Defendant David W. Stevens, Cochise County Recorder*

15

Rose M. Winkeler

16
Senior Civil Deputy
Coconino County Attorney's Office

17
110 E. Cherry Ave.

18
Flagstaff, AZ 86001-4627
rwinkeler@coconino.az.gov

19
*Attorney for Defendant Patty Hansen, Coconino County Recorder*

20

Gila County Attorney's Office

21
1400 E. Ash St.

22
Globe, AZ 85501
jdalton@gilacountyaz.gov

23
*Attorney for Defendant Sadie Jo Bingham Gila County Recorder*

24

Kenneth Angle

25
Graham County Attorney's Office

26
800 Main St.
Safford, AZ 85546

27
jdalton@gilacountyaz.gov
*Attorney for Wendy John, Graham County Recorder*

28

1  Greenlee County Attorney's Office
   P.O. Box 1717
2  Clifton, AZ 85533
3  jford@co.greenlee.az.us
   *Attorney for Defendant Sharie Milheiro Greenlee County Recorder*
4
5  La Paz County Attorney's Office
   1316 S. Kofa Ave., Ste. 607
6  Parker, AZ 85344
7  rdooley@lapazcountyaz.org
   *Attorney for Defendant Richard Garcia, La Paz County Recorder*
8
9  Joseph LaRue
   Maricopa County Attorney's Office
10 222 N. Central Ave., Suite 1100
   Phoenix, AZ 85004
11 laruej@mcao.maricopa.gov
12 *Attorney for Adrian Fontes, Maricopa County Recorder*
13
   Ryan Esplin
14 Mohave County Attorney's Office
   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
15 Ryan.Esplin@mohavecounty.us
16 *Attorney for Defendant Kristi Blair, Mohave County Recorder*
17
   Jason S. Moore
18 Deputy County Attorney
   Navajo County Attorney's Office
19 PO Box 668
   Holbrook, AZ 86025-0668
20 Jason.moore@navajocountyaz.gov
21 *Attorney for Doris Clark, Navajo County Recorder*
22
   Daniel Jurkowitz
23 Pima County Attorney's Office
   32 N. Stone Ave., #200
24 Tucson, AZ 85701
25 Daniel.jurkowitz@pcao.pima.gov
   *Attorney for Defendant F. Ann Rodriguez, Pima County Recorder*
26
27 Craig Cameron
   Pinal County Attorney's Office
28 PO Box 887

2

Florence, AZ 85132-0887
Craig.cameron@pinalcountyaz.gov
*Attorney for Defendant Virginia Ross, Pinal County Recorder*

George E. Silva
Santa Cruz County Attorney's Office
2150 N. Congress Drive
Nogales, AZ 85621
gsilva@santacruzcountyaz.gov
*Attorney for Defendant Suzanne Sainz, Santa Cruz County Recorder*

Yavapai County Attorney's Office
255 E. Gurley St.
Prescott, AZ 86301
Thomas.Stoxen@yavapai.us
*Attorney for Defendant Leslie M. Hoffman, Yavapai County Recorder*

Yuma County Attorney's Office
250 W. 2nd Street, St. G
Yuma, AZ 85364-2235
Bill.kerekes@yumacountyaz.gov
*Attorney for Defendant Robin S. Pouquette, Yuma County Recorder*

Roy Herrera
Daniel A. Arellano
Ballard Spahr LLP
1 East Washington Street, Suite 2300
Phoenix, AZ 85004-2555
602.798.5430
HerreraR@ballardspahr.com
arellanod@ballardspahr.com
*Attorneys for Defendant Katie Hobbs, Secretary of State*

/s/ Monse Vejar