Timothy A La Sota, AZSBN # 020539
**TIMOTHY A. LA SOTA, PLC**
2198 E. CAMELBACK RD., SUITE 305
PHOENIX, ARIZONA 85016
TELEPHONE: (602) 515-2649
tim@timlasota.com
*Attorney for* Amicus Curiae *Arizona Free Enterprise Club*

# UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| Arizonans for Fair Elections (AZAN), an Arizona nonprofit corporation; Arizonans Fed Up with Failing Healthcare (Healthcare Rising AZ), an Arizona nonprofit corporation; and Randi L. Turk, an individual; | Case No. 2:20-cv-00658-DWL <br><br> **AMICUS CURIAE BRIEF** <br><br> Honorable Dominic W. Lanza |
| Plaintiffs, | |
| v. | |
| Katie Hobbs, Arizona Secretary of State, Edison Wauneka, Apache County Recorder; David Stevens, Cochise County Recorder; Patty Hansen, Coconino County Recorder; Sadie Jo Bingham, Gila County Recorder; Wendy John, Graham County Recorder; Sharie Miheiro, Greenlee County Recorder; Richard Garcia, La Paz County Recorder; Adrian Fontes, Maricopa County Recorder; Kristi Blair, Mohave County Recorder; Doris Clark, Navajo County Recorder; F. Ann Rodriguez, Pima County Recorder; Virginia Ross, Pinal County Recorder; Suzanne Sainz, SantaCruz County Reorder; Leslie Hoffman, Yavapai County Recorder; and Robyn Pouquette, Yuma County Recorder; all in their official capacities, | |
| Defendants. | |

1
2

**INTRODUCTION**

3
4
5
6

These are extraordinary times, but that is not a reason for the Court to engage in the wholesale discarding of the rule of the law that following Plaintiffs' entreaties would necessarily involve.

7
8
9
10
11
12
13
14
15
16
17
18
19

The elephant in the room is the Plaintiffs' failure to discuss the Arizona Constitution, and while the E-Qual system is clearly not consistent with statutory law, it also cannot be instituted in a manner that is in compliance with the Arizona Constitution's provisions on the right to initiative itself.  As such, the Petitioners are reduced to an argument that the Arizona Constitution violates itself by providing for the right to initiative, while at the same time providing a framework, and requirements, for the exercise of this right that are improper.  Though they try to couch their cause of action as an attack on Arizona statutory law, it is the requirements in the same section of the Arizona Constitution as the provision providing for the right to initiative that is the real target of Plaintiffs' suit.

20
21
22
23
24
25
26
27
28

The allegedly offending constitutional requirements were included by the Founders, ardent supporters of the right to initiative and referendum, in the Arizona Constitution, and approved by the voters.  These requirements have endured through two world wars and the Spanish flu epidemic.  Even if this Court were to throw out every single piece of legislation that the Legislature ever enacted on the subject of ballot measures, creation of an E-Qual system for initiative and referenda

would violate the Arizona <u>Constitution</u>.

**WHAT THE ARIZONA CONSTITUTION SAYS ABOUT THE INITIATIVE AND REFERENDUM PROCESS**

If the only thing one knew about the initiative and referendum process came from the Plaintiffs' submissions in this cause of action, one would be led to believe that all the offending requirements stem from the Legislature's attempt to curtail this right with a series of unnecessary requirements that should all be dispensed with a court order nullifying these in favor of the E-Qual system.  The reality is quite different.

The Arizona Constitution reflects the citizenry of this state's support of the initiative and referendum process and enshrines this as a right in Article IV, Part 1, § 1.  To wit, subsection (2) states that "ten per centum of the qualified electors shall have the right to propose any measure, and fifteen per centum shall have the right to propose any amendment to the constitution."

Subsection (16) states that "[t]his section of the constitution shall be, in all respects, self-executing."  Article IV, Part 1, § 1, subsection (9) contains detailed provisions, including a number of requirements, for the exercise of the right:

> Form and contents of initiative and of referendum petitions; verification. Every initiative or referendum petition…<u>shall contain the declaration of each petitioner, for himself, that he is a qualified elector of the state (and in the case of petitions for or on city, town, or county measures, of the city, town, or county affected), his post office address, the street and number, if any, of his residence, and the date on which he signed such petition. Each sheet containing petitioners' signatures shall be attached to a full and correct copy of the title and</u>

text of the measure so proposed to be initiated or referred to the people, and every sheet of every such petition containing signatures shall be verified by the affidavit of the person who circulated said sheet or petition, setting forth that each of the names on said sheet was signed in the presence of the affiant and that in the belief of the affiant each signer was a qualified elector of the state…

(Emphasis added).

This provision has stood intact since statehood. *Kerby v. Griffin*, 62 P.2d 1131, 1132 48 Ariz. 434, 436–37 (Ariz. 1936)(noting that when the Constitution was enacted it statehood, it contained the above provision).

Throughout Plaintiffs' Complaint and Motion for a Temporary Restraining Order/Preliminary Injunction, they consistently avoid the Arizona Constitution and instead blame A.R.S. § 19-112, among other statutory law: "The circulator must attest to their [the signer's] eligibility [to sign the petition sheet] in an affidavit on the back of each petition sheet. See A.R.S. § 19-112(D)." (Motion for TRO/Preliminary Injunction, p. 12, lines 10-13). But they fail to mention that the complained of burdens of this provision are simply a restatement of the requirement of the Arizona Constitution cited above.

The Founders constitutionally enshrined a circulator system for ballot measures that relies on individuals to go out, speak to qualified electors, and convince them to sign a ballot measure petition. E-Qual is foreign to that and simply provides for individuals to sign candidate petitions on a website. As a matter of policy, reasonable minds can differ as to whether this part of the Arizona

Constitution should be "updated."  But the citizenry itself would have to make any such changes—if existing ballot measure procedure is "too inconvenient for present-day operation, the remedy is to amend it—not to ignore it."  *Western Devcor*, 168 Ariz. at 432, 814 P.2d at 773.

**IF ARTICLE IV, PART 1, § 1 OF THE ARIZONA CONSTITUTION CONTAINS AN UNCONSTITUTIONAL PROVISION, IT IS NOT SEVERABLE FROM THE PORTION OF THE SECTION ENSHRINING THE PUBLIC'S RIGHT TO INITIATIVE AND REFERENDUM**

It is clear that the constitutional scheme for the citizenry to exercise the right to initiative cannot be complied with if the E-Qual system is used.  The Arizona Constitution <u>itself</u> is an impediment to Plaintiffs' objective and they actually need part of it to be declared unconstitutional to succeed.  That raises the question of what the next step would be if the Court were to find that the constitutional scheme is somehow itself unconstitutional because it precludes use of the E-Qual system.  And the answer would be that the Court would turn to the question of whether the offending parts of Article IV, Part 1, § 1 could be severed from the unoffending ones related to the right to initiative.  The conclusion would be that this is not possible.

"Severability is a question of legislative intent," and Arizona courts look to whether the proponents of the law would have supported the unoffending portion of the law with the offending portion struck down. *State v. Watson*, 120 Ariz. 441, 445, 586 P.2d 1253, 1257 (1978).  The Arizona Supreme Court has expanded on

the principle of severability:

> The law concerning the severability of statutes is well settled…the valid part of a statute will be sustained where the valid and invalid parts are so separate and distinct that it is clear or may be presumed that the legislature would have enacted the former without the latter, if it had known of the invalidity, or, as otherwise stated, if the valid or invalid parts are not so intimately connected as to raise the presumption that the legislature would not have enacted the one without the other, the act will be upheld so far as valid. On the other hand, the whole statute will be declared invalid where the constitutional and unconstitutional provisions are so connected and interdependent in subject matter, meaning, and purpose as to preclude the presumption that the legislature would have passed the one without the other, but, on the contrary, justify the conclusion that the legislature intended them as a whole and would not have enacted a part only.

*Millett v. Frohmiller*, 188 P.2d 457, 460, 66 Ariz. 339, 342–43 (1948).

This same test is employed in the realm of constitutional provisions as well, except the Court judges it from the perspective of the voters rather than the Legislature.  *See Benjamin v. Arizona Dept. of Revenue*, 786 P.2d 1033, 1034–35, 163 Ariz. 182, 183–84 (App. 1989).

To start the analysis in this case, there is no expression of severability in Article IV, Part 1, § 1 itself.  To the contrary, the Section's statement that the Legislature intended the scheme to be "self-executing" demonstrates that all of the provisions related to referendum and initiative were intended to be so interrelated that severability was not consistent with this legislative intent.  It is not possible to have a self-executing scheme where the provisions regarding how the right is to be executed have been struck down, which tells us that the intention was that these

provisions stand or fall as whole.  *Id.*  There is the other obvious point that the electorate would be unlikely to create such a great power without any provisions or safeguards for its legitimate exercise.  To the contrary, while they provided for the right, they included detailed provisions to guide and safeguard its exercise and intended the rights could be exercised without any further legislative action.

If subsection (9) is somehow unconstitutional, the core right to circulate ballot measures contained in the same section of law is not severable from that and the scheme must be redone completely, which would not help these Plaintiffs.

**THE PLAINTIFFS' ATTEMPT TO SQUEEZE A FEDERAL CLAIM OUT OF WHAT IS FUNDAMENTALLY A QUESTION OF STATE LAW IS UNAVAILING**

It is true that a state is not required to provide the right to initiative, but once it does allow for citizen-initiated ballot measures, limited parts of the U.S. Constitution may be implicated.  *Lemons v. Bradbury*, 538 F.3d 1098 (9th Cir. 2008)("[w]hile a state may decline to grant a right to legislate through ballot initiatives, it may not grant that right on a discriminatory basis…")  The right mentioned in *Lemons* is not the same as the "rights" Petitioners are claiming.  To wit, Petitioners are demanding the right to be free from the constitutional provisions governing how the right is executed, as well as the right to demand special provision for exercise of that right that is suitable for the current environment.

The Plaintiffs also invoke the First Amendment.  But "the right to free speech and the right to vote are not implicated by the state's creation of an initiative

procedure, but only by the state's attempts to regulate speech associated with an initiative procedure…" *Save Palisade FruitLands v. Todd*, 279 F.3d 1204, 1211 (10th Cir. 2002).  And the United States Supreme Court has observed, that "[c]ommon sense, as well as constitutional law, compels the conclusion that government must play an active role in structuring elections". *See Burdick v. Takushi*, 504 U.S. 428, 433, 112 S.Ct. 2059, 2063, 119 L.Ed.2d 245 (1992).

Plaintiffs have been highly disciplined in their attempt to avoid the Arizona Constitution and instead focus on statutory law, even though much of the statutory law they complain about simply echoes constitutional law.  Plaintiffs effectively argue that a state can create a constitutional right to initiative and referendum, but cannot also, at the same time, create constitutional provisions regarding how that right is to be exercised.  This is simply not the law.  *See Burdick*, 504 U.S. at 433, 112 S.Ct. 2059, 2063, 119 L.Ed.2d 245 (1992); *see also Anderson v. Celebrezze*, 460 U.S. 780, 788 & n. 9, 103 S.Ct. 1564, 1570, 75 L.Ed.2d 547 (1983) (noting that a state has an interest in ensuring elections are run fairly and honestly and that proposals are not submitted for enactment into law unless they have sufficient support).

Whatever the impact of free speech and due process rights and the right to assembly are on ballot measure petitioning, *Save Palisade FruitLands* tells us that these are no greater in a ballot measure context than they are in other contexts that involve these rights.  Free speech related to ballot measures enjoys no greater

protection under the U.S. Constitution than other free speech. *Cf. Save Palisade FruitLands*. The remedy would be curtailment of any unconstitutional restrictions that have been imposed by government, not additional governmental action to "fix" the constitutionally infirm action.

Petitioners' argument actually takes this further and is akin to claiming that because the Coronavirus epidemic has resulted in lost opportunities for free speech and assembly the government is somehow obligated to attempt to replicate those lost opportunities by funding new fora for the exercise of such rights. There is no such requirement.

**EVEN IF PLAINTIFFS WERE CORRECT ON THE MERITS THERE ARE SERIOUS QUESTIONS ABOUT WHETHER THERE IS A REMEDY AVAILABLE IN THE TIME FRAME THEY DEMAND**

We have no way of knowing how long the coronavirus pandemic will last. It is possible the Governor's "stay at home" order may not even be extended beyond April 30. In the face of this uncertainty, and the flaws with Petitioners' position stated above, Petitioner asks this Court to order a statewide elected official to implement a whole new system for collecting signatures that is not statutorily authorized and runs afoul of the Arizona Constitution.

Plaintiffs claim that the E-Qual system can be easily retrofitted to accommodate ballot measure petitions. But neither the E-Qual system nor the statutory scheme related to its use are designed for ballot measures.

Implementation of the E-Qual statutes, A.R.S. §§ 16-316 to 16-318, has

9

proven to be far more difficult than the Plaintiffs claims, proven by the fact that the Secretary of State has been unable to expand the existing system for local candidates as required by law.  A.R.S. § 16-317 requires the Secretary of State to "provide a system for qualified electors to sign a nomination petition for candidates for city or town office, county office…by way of a secure internet portal."  The E-Qual system has been implemented for statewide and legislative candidates, but it has not been implemented for municipal, county, and precinct committee candidates, despite this requirement's January 1, 2017 effective date.  In light of this the Court should view the claim that there is even a <u>potential</u> short-term remedy with great skepticism.

In addition, there are a number of practical questions that are not addressed by Plaintiffs.  How will implementation be accomplished in such short order, and what kind of security risks are inherent in such a hasty change?  The current ballot measure process includes additional safeguards that are not replicated in E-Qual, such as the requirement that a certain portion of signer's signatures be checked against known signature of the purported signer.  *See* 19-121.02(A)(7).  This is an important safeguard.  *Reyes v. Cuming*, 952 P.2d 329, 331, 191 Ariz. 91, 93 (App. 1997)(observing "the manifest importance of signature comparison" by the county recorder).  This requirement represents a legislative judgment regarding protection of the integrity of the process that the Plaintiffs want thrown out too—E-Qual does not provide for such a safeguard.  The Court should not simply assume that a

hastily implemented E-Qual will afford the necessary safeguards.

**CONCLUSION**

The Coronavirus epidemic will not last forever, and almost as soon as one cycle for collecting ballot measure signatures ends another one starts up. Convincing a federal court to order a state official to do something with regard to what is, at its core, a state law right should be an uphill battle under any circumstances.  Here, the request is not to extend a deadline for a short period of time, but to create a new system for the Plaintiffs, even though such system is inconsistent with the state's Constitution.  Plaintiffs here have not demonstrated entitlement to the extreme relief requested.

RESPECTFULLY SUBMITTED this 13th day of April, 2020.

**TIMOTHY A. LA SOTA, PLC**

By: _/s/ Timothy A. La Sota_
Timothy A. La Sota
*Attorney for Amicus Curiae*

## CERTIFICATE OF SERVICE

I hereby certify that on April 13, 2020, I electronically transmitted the above document to the Clerk's office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to all CM/ECF registrants.

*s/ Timothy A. La Sota*